# Berney National Bank v. Guyon & Co.

*Bill in Equity to set aside Fraudulent Conveyances.*

1. *Fraudulent conveyances; effect of disposition by debtor of property
so as to prevent creditors from subjecting it to forced sale.*—A debtor,
whether solvent or insolvent, who makes any disposition of his prop-
erty to another, not in payment of his debts, for the purpose of pre-

venting, and which is calculated to prevent, his creditors from subjecting it at a forced sale to the satisfaction of their demands, although it would thereby be sacrificed, is guilty of hindering, delaying and defrauding his creditors; and such a transfer is fraudulent and void as to such debtor's creditors.

2. *Same; sale of all the assets of a corporation to one of its directors upon his assuming to pay all the corporate debts, and allowing him an extension of time; fraudulent.*—Where an insolvent corporation, by a resolution of its stockholders, sells all of its assets to one of its directors in consideration of his assuming and paying all of the corporate debts, and the resolution authorizing the sale allows such purchasing director 18 months in which to arrange and pay the corporate indebtedness, such sale, by reason of the credit extended, has the effect of hindering, delaying and defrauding the creditors of the corporation, and is, therefore, fraudulent and void as to its creditors.

3. *Same; same; a creditor purchasing a portion of the assets at a subsequent sale, whereby indorsing directors are released, is not a bona fide purchaser.*—An insolvent corporation, by a resolution of its stockholders, sold all of its assets to its president, who owned nine-tenths of the stock, in consideration of his assuming and paying all of the corporate debts, and by the resolution authorizing the sale the president was allowed 18 months in which to arrange and pay the corporate indebtedness. At the time of the sale the president and another director were individually liable to a bank as indorsers for the corporation's indebtedness. Subsequently the president, under an arrangement with the bank, sold a portion of the assets to the wife of his co-indorser, the bank agreeing to lend her the money to make such purchase. She gave the bank her note for the purchase money, secured by a mortgage on the property, and the money agreed to be loaned was applied in payment of the indebtedness of the corporation to the bank, and not a dollar was paid out in good faith to obtain the mortgage. At the time of this purchase the bank had actual notice of the sale of the corporate assets to the president, and constructive notice. at least, of the terms and conditions of such sale. *Held*, that by such subsequent sale to the wife and arrangement with the bank, there was secured an unlawful preference and advantage to the controlling directors of the corporation by their release from individual liability as indorsers, that the bank could not claim protection as a *bona fide* purchaser, and that such transaction was fraudulent and void as to the other corporate creditors.

4. *Same; same; right of exemption.*—Where an insolvent corporation makes a sale of all of its assets to its president, who owns a controlling interest and power in the corporation, upon the consideration the purchaser will assume and pay all its debts, and he is allowed 18 months within which to arrange and pay the coporate indebtedness, such sale being fraudulent and void as to the creditors of the corporation, the president obtains no title or interest available under the

exemption law, and can not hold any of the assets so purchased as exempt to him as against the corporate creditors.

5. *Same: same; bill to set aside such conveyance; when amendment no departure.*—When a bill is filed by creditors of a corporation to set aside as fraudulent and void a conveyance of all the corporate assets to its president and a mortgage subsequently executed to a creditor through such president, and the bill, in setting out the facts upon which the charge of fraud is based, avers·as a mere conclusion of the pleader, but as one of the grounds why the transfers were invalid and should be set aside, that the "assets were a trust fund," and avers facts showing the relation of the parties and the effect of the transactions assailed, an amendment of such bill, in which it is averred that the sale to the president and the execution of the moitgage to the creditor was to secure the payment of a debt of the corporation and thereby release the president and another director from liability thereon as indorsers, is not a departure from the original cause of action since the same legal results follow from the averments in the original and amended bill; and demurrers to the bill as amended upon the ground of a departure are not well taken.

6. *Amendment of bill; proper notice presumed on appeal in absence of error affirmatively shown.*—Where a complainant is allowed to amend his bill after the evidence has closed but before the final submission of the cause, it will be presumed on appeal, in the absence of error affirmatively shown, that the proper notice was given to defendant, and that the cause was at issue as to all the defendants when finally submitted.

APPEAL from the City Court of Birmingham, in Equity. Heard before the Hon. W. W. WILKERSON.

The bill in this case was filed on August 26, 1893, by the appellees against the appellant. The material allegations of the bill, upon which the complainants base their right to relief, are sufficiently stated in the opinion.

The fifth section of said bill charges that Steward & Eddy had no legal right to sell out to W. C. Steward, its president, said stock of goods for his assumption to pay its debts; that upon said Steward & Eddy determining to cease doing business the assets became a trust fund for the payment of its debts, and that the creditors of the corporation had a lien upon all assets of said company for the payment of their debts even against purchasers for value without notice; that said sale was a nullity and operated to confer no title on said W. C. Steward or the subsequent purchaser or lien holder under him; that said W. C. Steward had no right to make

an assignment of said property which was a trust fund, for the payment of the creditors of Steward & Eddy, so as to subject the same to the payment of the debts of all his individual creditors; that said W. C. Steward had no right in law or equity or in common honesty to claim as exempt to him $1,000 out of said property of said Steward & Eddy.

The prayer of the bill was that the court annul, vacate and set aside each and every one of the transfers referred to in the bill, and further, that the court would declare fraudulent and void, and hold for naught as against the debts of said creditors of the said Steward & Eddy, such pretended conveyances by said Steward & Eddy or Benj. W. Eddy to said W. C. Steward, and the said conveyances by said W. C. Steward to Mrs. I. M. Eddy, and the said mortgage by Mrs. I. M. Eddy to the Berney National Bank, and the claim of exemption by W. C. Steward, and said transfers to said B. W. Eddy.

Subsequent to the filing of the bill, to-wit, on December 21, 1894, the bill was amended by adding paragraph $3\frac{1}{2}$, which set out the facts relating to the sale of part of the goods to I. M. Eddy by W. C. Steward, and execution of the mortgage upon said goods by the Berney National Bank, which facts are sufficiently stated in the opinion.

After thus amending the bill, the complainant also amended the prayer thereof, praying in addition that the Berney National Bank be held as trustee *in invitum* for the $500 paid said National Bank by Mrs. I. M. Eddy out of the proceeds of the sale of goods to Steward & Eddy corporation and be required to account for the same.

On April 19, 1895, paragraph $3\frac{1}{2}$ was amended by adding the following averment: "Complainants aver, if they are mistaken in said conveyance of Steward & Eddy to W. C. Steward being fraudulent and void, then complainants aver said payments by W. C. Steward and Mrs. I. M. Eddy to said Berney Bank, and said mortgage given to said Berney Bank, was in pursuance of a secret agreement or understanding entered into by said Berney National Bank, Steward & Eddy corporation and W. C. Steward, at the time said Steward & Eddy corporation sold out all its assets to said W. C. Steward, whereby it was agreed that a preference or priority of

payment should be given to said debt, due by said Stewart & Eddy corporation to said Berney National Bank as aforesaid; that the purpose of said transaction was to accomplish indirectly what the law forbade to be done directly, to-wit, for said Steward and Eddy, an insolvent corporation, about to cease to do business, to give a preference or priority of payment to a debt on which its directors were indorsers."

On February 19, 1894, a decree *pro confesso* was rendered against Steward & Eddy corporation and against B. W. Eddy and Mrs. I. M. Eddy. After the amendment of the bill on December 21, 1894, a decree *pro confesso* was taken against the same defendants. To the bill as amended on April 19, 1895, said defendants filed no answer, and no decree *pro confesso* was taken against either of them.

The Berney National Bank demurred to so much of the amended bill as is contained in the amendment which forms section three and a half of said bill as amended, as well as also to the amended prayer of said bill contained in said amendment, and for causes of demurrer thereto assigned: 1st. That said amendment is an entire departure, so far as this defendant is concerned, and its rights under the mortgage executed to it by I. M. Eddy is concerned, from the averment and prayer for relief which is in the original bill. 2d. Because the statements of the amended bill and prayer for relief therein are repugnant to and inconsistent with the statements with reference to the mortgage to the defendant, made in the third section of original bill and would entitle the complainants, if true, to an entirely different relief to that prayed for in the original bill. 3d. Because by the original bill, if this defendant's mortgage was fraudulent and void, as therein prayed, defendant would not be entitled to share in or receive any portion of the proceeds of the goods so mortgaged as a creditor of Steward & Eddy corporation, whilst under the averment of the amended bill and the relief therein prayed, defendant, as a creditor of the corporation of Steward & Eddy, would be entitled to receive a portion of the said trust fund.

On the submission of the cause upon the demurrers, the court rendered a decree overruling them. In their answer to the bill the respondents denied the allegations

of fraud, and set up the facts relating to the transaction which are shown in the opinion.

Upon the final submission of the cause, on the pleadings and proof, the judge of the city court, sitting as chancellor, decreed that the complainants were entitled to the relief prayed for. The respondents appeal from this decree, and assign as error the overruling of their demurrers to the amended complaint, and the rendition of the final decree.

JAMES E. WEBB and JOHN P. TILLMAN, for appellant. The city court erred in rendering a final decree in said cause before the cause was at issue upon the bill as amended April 19th, 1895, either by answer of Steward & Eddy or W. C. Steward or on decrees *pro confesso* against them; and the defendant may on appeal take advantage of this error. The amendment of April 19th, 1895, was a material amendment calling for an answer from each of said defendants upon a new and material issue injected thereby into the cause. It was an error in the court to render any final decree with the pleadings in that condition and the following authorities hold that it is a reversible error though the attention of the lower court was not called to the fact.—*L. & N. R. R. Co. v. Brown*, 101 Ala. 274; *Alston v. Alston*, 34 Ala. 15; *Masterson v. Masterson*, 32 Ala. 438; *McClenny v. Ward*, 80 Ala. 243; *McDonald v. McMahon* 66 Ala. 116. The same is the rule when a necessary party has not been brought before the court.—*Prout v. Hoge*, 57 Ala. 28; *Lawson v. Ala. Warehouse Co.*, 73 Ala. 294.

2. The court erred in allowing the amendment of December 21st, 1894. It was a total departure presenting an entire new cause of action, and one inconsistent with the other. The original bill averred *the solvency of the Steward & Eddy corporation*, whilst this amendment struck out that averment, and the original bill in the third paragraph averred that the conveyance to W. C. Steward was without any consideration, *and was the act of B. W. Eddy*, the secretary, and not of the corporation. If it was not a corporate act then the corporation was not guilty of any fraud. Whilst this amendment avers the conveyance of the 13th of June, 1893, to be *the act of the corporation*, and made for the purpose of hindering, delaying and defrauding the creditors of the

[Berney National Bank v. Guyon & Co.]

corporation. The original bill and prayer is predicated upon the idea that *the corporation assets were a trust fund*, and the amendment was filed to meet the contrary phase of the law as declared in *O'Bear Jewelry Co. v. Volfer*, 106 Ala. 205. *Stevenson v. Brunsun*, 83 Ala. 454; *Rapier v. Gulf City Co.*, 69 Ala. 476; *King v. Avery*, 32 Ala. 169; *Ray v. Womble*, 56 Ala. 32; *Ward v. Patton*, 75 Ala. 207; *Glass v. Glass*, 76 Ala. 371.

3. The Berney National Bank was a *bona fide* purchaser under the mortgage from Mrs. Eddy. While the resolution of the corporation directly authorized the sale to be made to Steward on 18 months' time yet the actual sale and purchase as shown by the written obligation of W. C. Steward given on the 14th of June, 1893, as well as the fact that he within two weeks thereafter paid to the Berney National Bank $4,992 of the debts with the money which Mrs. Eddy paid Steward, shows that he did not contract with the corporation for time. His assumption to pay the debts is in these words "do hereby obligate myself, assume and promise to pay all debts of Steward and Eddy now existing." There was no trust upon the corporation's assets which prevented the sale—*O'Bear Jewelry Co. v. Volfer*, 106 Ala. 205; *Foster v. Vaun Mut. Ptg. Co.*, 92 Mo. Rep. 79. Under the facts though W. C. Steward was the president he had the right to contract with the stockholders to buy the corporation assets.—*Warfield & Co. v. Marshall County Com. Court*, 72 Iowa 670, n; *Richwald v. Com. Hotel*, 106 Ill. 439; *Beachman v. Koch*, 92 Ala. 452; *State v. Western Irrigating Co.*, 10 Amer. St. Rep. 168; *Warfield v. Marshal*, 72 Iowa Rep. 666; *Johnston v. Sherer*, 18 Ala. 741; *Elmore v. Smith*, 7 Ala. 262; 1 Morawetz on Corporations, §§ 335, 420, 527, 531; 2 Morawetz on Corporations, § 802; 1 Beach on Private Corporations, § 357, n. 3.

4. The validity of the sale to Mrs. Eddy cannot be effected by subsequent transactions and events unless the subsequent transactions and events were contemplated at that time.—*Governor v. Campbell*, 17 Ala. 556; *Crawford v. Kirksey*, 51 Ala. 301; *Rochester v Armour*, 92 Ala. 435; *Ellison v. Moses*, 95 Ala. 227. The mortgage to the Berney National Bank, though made on the 4th of August, *relates back to the date of* the loan, because it was then agreed that it should be given.—2 Pomeroy's Equity, § 1237;

[Berney National Bank v. Guyon & Co.]

*Ellison v. Moses*, 95 Ala. 229, and authorities there cited; *Goldthwaite v. Ellison*, 99 Ala. 494. Therefore the Berney National Bank as mortgagee was *bona fide* purchaser.—*Watts v. Bennett*, 56 Ala. 343; *Wells v. Morrow*, 38 Ala. 129. See Leading cases in Equity, Hare and Wallaces Notes, pages 83 to 108.

5. A sale by even an insolvent debtor *of all* his property either in payment of a *bona fide* preexisting debt which amounts to the full fair value of the property, reserving no benefit to grantor; or a sale to a creditor whose debt is not equal to the value of the property, but who in addition assumes the payment of other *bona fide* debts of grantor to the full amount of the value of the property sold, has been sustained by this court in the following decisions; and is not affected by any intention of the grantor or the fact that it *delays* other creditors of the grantor not provided for.—*Chipman v. Stern*, 89 Ala. 209; *Rankin v. Vandiver*, 78 Ala. 562; *Dixon v. Higgins*, 82 Ala. 284. If a promise to pay one debt is good, then much more so is a promise to pay all the debts alike bound to be good and to sustain the contract.—*Nat. Bank of Rep. v. Dickinson*, 107 Ala. 265; *McCord v. Tennille*, 81 Ala. 168; *Bank v. Coleman*, 81 Ala. 170. If W. C. Steward obligated himself and promised the corporation to pay all the debts of the corporation, as the consideration of his purchase, it remained with the corporate creditors to elect whether they would accept the benefit of such promise and take W. C. Steward as their debtor, or refuse to do so and sue the corporation.—*North Ala. Dev. Co. v. Short*, 101 Ala. 233; *Coleman v. M. & M. Bank*, 87 Ala. 217; *Dimmick v. Register*, 92 Ala. 460; *Young v. Hawkins*, 74 Ala. 370. When the creditors made their election, not to claim against Steward upon his promise to pay them, as they do by suing the corporation, then Steward's promise to pay for the assets becomes a debt *immediately* payable to the corporation by the terms of his *written contract*, of which no verbal agreement can be given in evidence, and such promise is assets of the corporation, taking the place of the property sold, and subject to the creditors of the corporation for payment of their claims by garnishment.—*North Ala. Dev. Co. v. Short*, 101 Ala. 333.

MOUNTJOY & TOMLINSON and BUSH & BROWN, *con-*

*tra*.—1. A demurrer will be presumed on appeal to have been waived, if the record does not show a ruling thereon.—*Birmingham Flooring Mills v. Wilder*, 85 Ala. 593 ; *Marcy v. Howard*, 91 Ala. 133 ; *K. C., M. & B. R. R. Co. v. Webb*, 97 Ala. 157 ; *Steed v. Knowles*, 97 Ala. 573 ; *Harper v. Campbell*, 102 Ala. 342. A decree *pro confesso* can not set aside by amendment, or effect a decree *pro confesso* on amendment. An amendment to a bill or the filing of an amended bill will not set aside a decree *pro confesso* as to any defendant to the original or any other bill, nor shall a decree *pro confesso* for want of an answer to an amendment or an amended bill operate as a decree *pro confesso* on the original or any other amended bill already answered.—Code of 1886, 49 Rule of Practice, p. 819.

2. Where the amendment merely varies the details of one and the same transaction, without operating any change in the rights of the parties, it is not a departure. *Harrison v. Yerby*, 14 So. Rep. 321 ; *Milner v. Stanford*, 102 Ala. 277 ; *Johnson v. Durner*, 88 Ala. 580 ; *Collins v. Sticks*, 96 Ala. 338 ; *Fite v. Kennemer*, 90 Ala. 470 ; *Winston v. Mitchell*, 93 Ala. 554. In a bill to set aside a fraudulent conveyance, the fraudulent grantor is not a necessary party.—*Tompkins v. Levy & Bro.*, 87 Ala. 263 ; *Coffey v. Norwood*, 81 Ala. 512. When parties, after an amendment, treat the cause as at issue, it will be considered at issue on appeal.—*Jackson v. Sackitt* 35 N. E. Rep. 23.

3. A conveyance made to hinder, delay, and defraud creditors is equally fraudulent and void as to the creditors of the grantor, as when made to defraud.—*Lehman, Durr & Co. v. Kelley*, 68 Ala. 192 ; *Knight v. Backer*, 72 Amer. Dec. 388 ; s. c. 1 Beasley Chancery (N. J.) 24.

To charge a party with notice of fraud, it is not necessary that he should have actual notice, if he is charged with constructive notice, and this may be inferred from knowledge of suggestive facts which if followed up, would have led to the discovery of the fraud.—*Hodges v. Coleman*, 76 Ala. 103 ; *Lehman, Durr & Co. v. Kelly*, 68 Ala. 193.

COLEMAN, J.—Complainants, as creditors of Steward & Eddy, a corporation, by the present bill seek to set aside and annul certain transactions entered into be-

tween the said corporation and W. C. Steward, who was the president, treasurer and owner of nine-tenths of the stock of the corporation ; and also a transaction between the said Steward and one I M. Eddy, who was the wife of B. W. Eddy, the manager and secretary of the corporation ; and also a mortgage executed by the said I. M. Eddy to the Berney National Bank, a creditor of said corporation. The bill avers and the evidence shows that on the 14th of June, 1893, the said corporation, being then largely indebted to complainants and others, some of whose demands were due and others to fall due within 30, 60 and 90 days, and not able to meet its liabilities at maturity, by a resolution adopted at a meeting of the directors, who represented all of the stock of the company, agreed to sell all of its assets, of every kind and character, to W. C. Steward, in consideration that he would assume and pay all the debts of the corporation, and the resolution directed the secretary and general manager to execute a bill of sale accordingly. The resolution provides "that said W. C. Steward be allowed eighteen months in which to arrange and pay the indebtedness of Steward & Eddy." W. C. Steward "in consideration of the sale and conveyance by Steward & Eddy of all its property, as mentioned in the conveyance, this day made to me * * * assume and promise to pay all debts and liabilities of Steward & Eddy now existing." The resolution and agreement were regularly entered upon the minutes of the corporation. This transaction is assailed by complainants as fraudulent and void, and we will first dispose of it.

Although W. C. Steward and B. W. Eddy testify, that they did not consider the corporation insolvent at the time of the sale to W. C. Steward, it is obvious from their own testimony, that if the creditors pressed their claims, and the assets were subjected to a forced sale, that they were not sufficient to satisfy the indebtedness of the corporation, and both hoped and it was expected that W. C. Steward would be able to get an extension of time upon the debts, and prevent a forced sale by creditors, and sacrifice of the property. It is insisted by appellant that although the resolution allowed W. C. Steward eighteen months within which to arrange and pay the debts of the corporation, that his obligation was absolute, and that he was required to pay them at once.

The argument is not warranted. The authority to sell, the terms of the sale, the sale itself and agreement to pay are to be construed together as an entire transaction. The entire proceedings were begun and consummated by the same parties, at the same time. We know of no rule of law which would force the purchaser to pay otherwise than as provided by the resolution of the board and the agreement to pay, which together constitute the contract. We are of opinion and declare the law to be, that a debtor, whether solvent or insolvent, who makes any disposition of his property to another, not in payment of his debts, for the purpose of preventing his creditors from subjecting it to the satisfaction of their demands at a forced sale, although it would thereby be sacrificed, and such disposition is calculated to have such effect, is guilty of hindering, delaying and defrauding his creditors.—*Knight v. Parker*, 72 Am. Dec. 388. Whether the person to whom the property is thus disposed would also be guilty, depends upon the facts and the principles of law applicable to him. If the property had been sold to W. C. Steward, the purchase money payable to Steward & Eddy, the vendor, upon a credit of six or eighteen months, the sale would be invalid, for the reason that the credit given, hindered and delayed the creditors.— *Lehman, Durr & Co. v. Kelly & Bro.*, 68 Ala. 192; *Bank v. St. John et al.*, 25 Ala. 621. The effect upon the creditors, is the same, where by the terms of the sale and purchase, the purchaser is allowed the same time within which to pay the creditors of the vendor. Under any view we may take of this transaction, we are led to the conclusion that the sale to W. C. Steward was calculated to hinder, delay and defraud the creditors of the Steward & Eddy corporation, and as to them must be held invalid.

We will next consider the sale by Steward to I. M. Eddy, and the mortgage executed by her to the Berney National Bank together, as the bank is the party vitally concerned in this transaction. The sale to W. C. Steward was concluded on the 14th of June. At that time, Steward & Eddy, the corporation, was indebted to the Berney National Bank, with which it had done its banking business, in about five thousand dollars or more. Thirty-five hundred dollars was due for borrowed

money and evidenced by its promissory note. Its lia-
bility for the remainder was that of indorser for paper
discounted by the bank. Upon all of this indebtedness
W. C. Steward and B. W. Eddy were liable, individually
as indorsers. It is uncontroverted, that at the time of
the sale to W. C. Steward, B. W. Eddy, for articles
purchased from the corporation, was indebted to it be-
tween twelve and sixteen hundred dollars, and that he
owned no property subject to execution. Under these
circumstances, on or about the 29th of June, W. C.
Steward, B. W. Eddy acting for his wife, I. M. Eddy,
and the Berney National Bank effected a sale of a part
of the assets which had been purchased by W. C. Stew-
ard from the corporation, amounting in value to four
thousand nine hundred and ninety-two 24-100 dollars,
to I. M. Eddy. The sale to I. M. Eddy was concluded
July 2d, 1893. The arrangement was, that the goods
were to be purchased by B. W. Eddy for his wife I. M.
Eddy, for cash, the bank agreeing to loan her the money
with the understanding that she was to execute a note
and mortgage to the bank upon the goods, to secure the
loan, but the money loaned was to be applied in payment
of the indebtedness of the Steward & Eddy corporation to
the bank. Under the arrangement no money in fact was
loaned other than the amount was credited as agreed up-
on. Mrs. Eddy executed her note payable thirty days
for the amount, but for some reason the mortgage was
not then executed. When the note fell due (August 2d)
Mrs. Eddy paid $500 on the note, proceeds of the sale of
the mortaged goods, and renewed the note and executed
the mortgage in pursuance of the previous agreement.
On the same day (August 2d) W. C. Steward made a gen-
eral assignment of all his property, for the benefit of all
his creditors, including among his creditors the creditors
of the Steward & Eddy corporation, but claimed his ex-
emptions. The property selected as exempt, largely
consisted of the property purchased by him from the
Steward & Eddy corporation. Mrs. Eddy seems never
to have been present, or to have taken any part person-
ally, in any of these transactions, except on the occasion
when she signed the note and mortgage to the bank, B.
W. Eddy having represented and acted for her. It is in
evidence that at the time of the arrangment for the pur-
chase of the goods by Mrs. Eddy, upon which she was to

execute the mortgage to the bank, the bank had no actual knowledge of the pecuniary condition of the Steward & Eddy corporation, or that in the sale to W. C. Steward he was allowed eighteen months or other time within which to arrange and settle the debts of the corporation, nor did it have actual knowledge of the pecuniary condition of W. C. Steward, individually ; and there is evidence tending to show that the bank had reason to believe that the corporation was not insolvent, and that Steward was solvent. It is uncontroverted that the bank was chargeable with knowledge that the corporation had sold out its entire assets to W. C. Steward on the 14th of June, and ceased to be a going concern, and that it owed debts in addition to those due the bank, and that by the terms of the sale, W. C. Steward assumed to pay its liabilities. The circumstances leave no reasonable doubt, that upon inquiry the bank could have ascertained that by the terms of his purchase, W. C. Steward was allowed time within which to arrange and settle the debts of the corporation, and that his purchase of the assets of the corporation, under the facts, was fraudulent and void as to its creditors. The bank was also chargeable with knowledge, that by the settlement of the debts due it from the corporation, its president, W. C. Steward, and its general manager and secretary, B. W. Eddy, after it ceased to do business, and without any intention of resuming business, secured their release from individual liability as indorsers—a preference and advantage to the controlling directors of an insolvent corporation, or one which has stripped itself of all means to pay its debts, and ceased to do business, a court of equity will not tolerate. The bank did not part with a dollar as a loan in good faith to obtain the mortgage. It merely substituted Mrs. I. M. Eddy for the original debtor. The money under the pretense or form of a loan to her, according to the agreement, was applied to the debt of the corporation, and she became the debtor. It was in legal effect no more than if W. C. Steward himself had completed the arrangement in his own name without making use of Mrs. I. M. Eddy. However just and fair it may have supposed the advantage to the corporation and to Steward thereby obtained to have been, in a court of equity it was doubly fraudulent and vicious.—*Corey v. Wadsworth*, 99 Ala. 68 ; *Good-*

*year Rubber Co v. Scott*, 96 Ala. 439, and authorities.
We have not considered any right of Mrs. Eddy in the
matter, as she was a mere conduit, and confessed all the
material averments of the bill by her failure to answer,
and the real defense as to this transaction is that made
by the bank. She was a mere instrument to accomplish
certain purposes of the parties in interest.

We have decided that a sale made by an insolvent
partnership of all its assets, to a member of the partner-
ship, with the intent to delay and defraud its creditors,
did not vest in the purchaser a title or interest available
to him under the exemption laws.—*Aiken v. Steiner*, 98
Ala. 355. The conscience of a court of equity must
be seared, that would allow the president of an insol-
vent corporation, owning a controlling power, to pur-
chase all of its assets on a credit, and then without pay-
ment hold them under the exemption laws against its
creditors. Good faith and common honesty require that he
should account to the creditors for the property,
and so should all others who are not *bona fide*
purchasers.

There are some assignments of error directed against
the rulings of the court upon demurrer to the bill, and
amended bill. We are of the opinion the object of
the bill originally and as amended was to subject the
assets of the Steward & Eddy corporation, which were
purchased by W. C. Steward, and a part of which were
subsequently mortgaged to the bank, to the payment of
the debts of the corporation. The bill throughout assails
both these transactions as fraudulent and void, and
states the facts upon which the charge of fraud is made.
True, in one place it avers, that the "assets were a trust
fund," but that is averred as a conclusion, and was not
good pleading. A reading of the paragraph in which
this statement occurs, shows that conclusion was averr-
ed as one of the grounds why the sale was invalid and
and should be set aside, and why Steward could not as-
sert a claim of exemption. The right to relief is not
based upon any lien the complainants held upon the
property, but wholly upon the grounds, that the trans-
actions were invalid and fraudulent, and should be set
aside and annulled.

It is further contended that the cause was not at issue
when submitted for final decree. Decrees *pro confesso*

were taken against all the defendants, except the bank and W. C. Steward. After the evidence had closed, and when the cause was ready for submission, the complainants by leave of the court amended their bill. The bank and W. C. Steward were present in court, and submitted the cause without objection. The statute, section 3449 of the Code, no doubt gave them a right to a continuance but this they waived. Decrees *pro confesso* had been entered against the other respondents upon the bill and amended bill made prior to the last amendment. As to this last amendment the abstract states as follows : "After notice to defendant by leave of court, complainants on the 19th of April, 1895, amended their bill of complaint, as theretofore amended, by adding after and at the end of paragraph 3 ½ the following averrment." Here the amendment is set out. Who is referred to as "defendant" to whom notice was given does not appear. Whether the "defendant" was one or more of those against whom decrees *pro confesso* had been rendered, or a "*respondent*" who had answered the bill, is a mere question of presumption. For aught that appears the "notice" may have been in strict conformity to section 3456 of the Code and Rule 43 Chancery Practice. Error must be affirmatively shown. Independently of these considerations, the amendment was immaterial and without effect. It evinces a confusion of the understanding as to the legal effect of the facts averred, and the character of the relief the complainants were entitled to under the bill, and especially paragraph 3 ½ to which the amendment was added. The essence of the amendment was, that the sale to Steward and by him to I. M. Eddy and the execution of the mortgage was to secure the payment of the debt of the corporation, and thereby release W. C. Steward, the president, and B. M. Eddy, manager, and directors, from liability as indorsers. Without this amendment, the averments of the bill showed their official position as directors of the corporation, and that they were indorsers of the debts due from the corporation to the bank, and it averred the facts by which these liabilities were extinguished. The same legal results follow from these averments of facts, whether the purpose was open or "secret." We find no reversible error in the decree of the court in any respect.

Affirmed.