# McWilliams *v.* Rodgers.

*Statutory Real Action in Nature of Ejectment.*

1. *Proof of fraudulent intent in execution of deed.*—The use to which a deed is applied, is a circumstance to which the jury may look, in determining the intent with which it was made ; yet a charge to the jury, asserting that "the use to which a deed is applied *is evidence* of the intent with which it was made," is calculated to mislead them, if given without explanation, and may therefore be refused.

2. *Charge requiring explanation.*—A charge asked, which requires explanation or limitation, to prevent it from misleading the jury, is properly refused.

3. *Validity of mortgage by insolvent debtor to preferred creditor.*—The several charges of the court to the jury in this case, as to the validity of a mortgage, or deed of trust, executed by an insolvent debtor to several preferred creditors, tested by the principles declared in the cases of *Wiley, Banks & Co. v. Knight* (27 Ala. 336), and *Reynolds v. Welch* (47 Ala. 200), and held free from error.

4. *Abstract charge.*—An abstract charge will not work a reversal of the judgment, when it asserts a correct legal proposition, unless this court can perceive that it probably misled the jury.

APPEAL from the Circuit Court of Autauga.

Tried before the Hon. JAMES Q. SMITH.

This action was brought by A. K. McWilliams against W.

[McWilliams v. Rodgers.]

L. Rodgers, to recover the possession of a tract of land near Prattville, containing about twenty-four acres, together with damages for its detention; and was commenced on the 13th March, 1874. The land had belonged to Joshua White, and both of the parties claimed under him; the plaintiff under a sheriff's deed, dated March 3, 1873; and the defendant under a mortgage, or deed of trust, dated the 3d September, 1867, and a deed to himself, as the purchaser at a sale made under it, dated the 28th September, 1872. The sheriff's deed to the plaintiff was founded on a sale under execution, issued on a judgment which M. Spigener had recovered against said White and others, on the 6th October, 1871, for $2,271.40; and recited the payment of $1,500 as its consideration. The plaintiff proved, that this judgment was founded on a debt created in 1862, or 1863; and that said White was in possession of the land at the time of the levy, and had been in possession for many years before that time. The mortgage, or deed of trust, under which the defendant deduced title, dated September 3, 1867, conveyed the said tract of land, together with three mules, one horse, fifteen head of cattle, and the grantor's growing crop of cotton, to C. S. G. Doster, W. H. Northington, S. H. Pearce, Freeman Miles, and A. K. McWilliams, and was conditioned as follows: "Whereas, the said C. S. G. Doster is security for me on two notes, one for $112.50, and the other for $56.25, the first made August 6, 1858, and the other made September 7, 1858, signed by myself, with the said C. S. G. Doster as security, and payable to Mills Rogers, on the 1st January, 1859; and whereas, W. H. Northington is my security on a note for $225, dated October 2, 1858, and payable to Mills Rogers, on the 1st January, 1859; and whereas, Stephen H. Pearce is my security on a note to Berry Tatum for $575; and whereas, I am owing Freeman Miles $500, and A. K. McWilliams $500: Now, if the said notes, or either of them, is or remains unpaid on the 1st September, 1872, I hereby authorize and empower the said C. S. G. Doster, W. H. Northington, S. H. Pearce, Freeman Miles, and A. K. McWilliams, or either of them, or their personal representatives, to enter upon and take possession of said property, and to sell the same at public or private sale, as they or either of them may see proper, and upon such terms, and with such notice being given, as may seem right and proper to him or them so selling the same; and with the proceeds of sale to satisfy the said notes in their order consecutively, as they are mentioned in the foregoing conveyance, commencing with the first notes on which C. S. G. Doster is security, and giving priority and preference in payment to the same, and giving priority in payment to each

note as they are mentioned in the foregoing conveyance; and after satisfying the same, to pay over the remainder, if any, to the said Joshua White." The sale of the land under this mortgage was made on the 28th September, 1872, by said Doster and Northington; and their deed to the defendant, as the purchaser, recited the payment of $1,500 as its consideration. The validity of this mortgage, or deed of trust, was the only matter of controversy in the case.

"The plaintiff introduced said Joshua White as a witness, who testified, that he was insolvent at the date of said deed, and owed about $12,000; that suits had been commenced against him, and he feared larger judgments; that said deed of trust was made for the purpose of saving his property from his creditors not provided for in the deed, until he could get time to pay them; that the debt in favor of Spigener, for which his property was sold under execution, was contracted some time in 1862–3; that the deed of trust conveyed all his unincumbered property; that the crop mortgaged by him was used by himself, and so was most of the cattle, though some of them were lost or stolen; that the mules conveyed by the mortgage were kept by him for a number of years, and finally sold; and that he retained the possession of the land conveyed, until it was sold under the deed. He further testified, also, that said C. S. G. Doster wrote the deed at his request; that he told Doster, at the time, of his situation, and that the purpose of the deed was to enable him to hold and use his property until he could work out his debts; also, that he spoke to none of the persons provided for in said deed, except Doster. It was shown, also, that said Doster was a practicing attorney, and lived near Prattville in said county; that said White also lived in Prattville, and that a number of suits were then pending against him in the Circuit Court of said county. S. S. Booth, A. M. Morris, and William White were then examined, and testified, that they knew said Joshua White, and were engaged in business in Prattville when he executed said deed of trust; and that it was a matter of notoriety in Prattville, at the date of said deed, that said White was insolvent. It was shown, also, that one of the suits then pending against said White claimed $10,000, and was brought by W. H. Northington, one of the trustees in the deed; and that said White had given an acceptance of service on the writ, waiving the stay-law then in force, and consenting that judgment be taken at the next term thereafter. This suit, the said Doster testified, he settled with said Northington, either before or after the execution of said deed of trust (he could not remember which), by letting a judgment go for a small sum—$200, or

$300. It was shown, also, that Spigener's claim, for which the property was sold under execution, was also in suit in said court at the time said deed was executed, and that said Northington was the attorney for the plaintiff. The plaintiff showed in evidence, also, that the only consideration for the execution of said deed of trust was the antecedent debts thereby secured.

"The plaintiff having here closed, the defendant introduced said C. S. G. Doster as a witness, who testified, that he wrote the said deed of trust at the request of said White; that he told White, during the interview, that the property conveyed was exempt from execution; that he did not then know that said White was insolvent, or owed any debts of any consequence, except those secured in the deed of trust; that he alone, of all the trustees named in the deed, knew of its execution; that he did not communicate it to the other trustees, for some time after its date; that in taking and writing said deed he acted in good faith, without any intent to hinder, delay, or defraud any other creditors of said White; that notice was given, at the trustees' sale, of the execution then out on Spigener's judgment, and in the hands of the sheriff; and that the property sold, notwithstanding, for $1,600, and the purchaser received the deed read in evidence, which was admitted to be in due form. On cross-examination of said White, it was shown that the balance of a claim which he had against the Red Mountain Iron and Coal Company, for the hire of slaves during the war, and for his own services, for some eight or ten thousand dollars, was not included in said deed of trust, and was afterwards compromised and settled by him for about $150. Said White testified, also, that he was by trade a carpenter, and had a horse, and some household and kitchen furniture, and a planing machine, and tools of his trade, which were not embraced in said deed; also, that he had one hundred and sixty acres of land, which was not included in said deed, but which was mortgaged to one Alexander for more than its value, and that there were some debts due to him not embraced in said deed. There was no evidence of the value of the land sued for, at the date of the execution of said deed, except the amounts which it brought at said two subsequent sales, and no evidence that there was any claim made of the same as exempt from execution.

"This being all the evidence in the case, the plaintiff requested the court, in writing, to charge the jury—

"1. That there is no presumption that any of the parties to the deed of trust assented to it, except Doster, who took it, and White, who executed it.

[McWilliams v. Rodgers.]

"2. That the law does not permit a person in failing circumstances to mortgage his property, to pay certain selected creditors, and to put off the law day of the mortgage to a distant day; and a mortgage so doing, when it is shown that the parties receiving it paid nothing for it, or had notice of the insolvency, or were put on inquiry as to the condition of the debtor, is void as to existing creditors.

"3. That if the mortgagees gave nothing valuable for the execution of the mortgage, they are not *bona fide* purchasers; and if the purchaser at the mortgage sale had notice, at the time of the sale, that the mortgage would be attacked for fraud, and that the property was then levied on, he is not a *bona fide* purchaser.

"4. That if the property sold under execution was not claimed as exempt before the sale, the exemption is waived; and a fraudulent conveyance of such property is the same as a fraudulent conveyance of any other property; and that, as there is no evidence in the case that there was any claim of exemption of the property sued for, from the execution under which it was sold, the jury have nothing to do with that question.

"5. That any mortgage, or other deed, made by a debtor in failing circumstances, of the bulk of his property, if any use or benefit is reserved to the grantor, is void, if the persons receiving it have notice of the insolvency, or are put on inquiry, or paid nothing for it.

"6. That the actual intent of the parties need not be inquired into, if the jury are satisfied that White was largely indebted and insolvent, and executed the mortgage voluntarily, and without any consideration, covering all, or a large part of his property, and postponing the right of the trustees to sell the property until 1872—that the deed is fraudulent as matter of law, and void as to the existing creditors of White.

"7. That the making of an assignment, with preferences, is an admission on the part of the debtor of his inability to pay all his debts, or at least renders such payment doubtful; and any party who takes such a deed, is at least put upon inquiry as to the debtor's condition; and that is the same as actual notice.

"8. If the jury believe that White was largely indebted at the date of the mortgage to Doster and others, and that suits were then pending against him, and that the mortgage was executed as it purports to have been made, and embraced all, or the larger part of his property, and that the parties to whom it was made paid nothing for it,—then the mortgage is

fraudulent and void as to the existing creditors of said White at that time, and the plaintiff is entitled to recover.

"9. A particular intent to defraud creditors is not necessary, in order to render a conveyance fraudulent and void as against them: if the necessary consequence of the deed is to hinder and delay them, then it is fraudulent and void as to such existing creditors.

"10. The use to which a deed is applied, is evidence of the intent with which it was made: if the deed was used to hinder and delay creditors, then it is evidence that it was so intended; and if found to be so, it is void as to existing creditors."

The court gave all of these charges as asked, except the last, which was refused; and the plaintiff excepted to its refusal. Exceptions were also reserved by the plaintiff to the following charges, which were given by the court on the written request of the defendant:—

"1. If the jury believe, from the evidence in the cause, that Joshua White made the said mortgage in good faith, with an honest intent to secure the debts therein, and without intent to hinder, delay, and defraud his creditors, although he was at the time in debt more than he was able to pay, said mortgage is valid and binding, and the purchaser under it acquired a good title to the property purchased, if the terms of the mortgage were complied with in conducting and making the sale under it.

"2. In determining the question of fraud, the jury may look to the fact, if it exist, that White did not convey all of his property.

"3. A man in failing circumstances may make a mortgage to secure the payment of prior debts, provided it is not done with intent to hinder, delay, or defraud his creditors, and the mortgage is received in good faith, without intent to aid the mortgagor in hindering, delaying, or defrauding his creditors.

"4. If the jury believe, from the evidence, that White made the said mortgage to Doster and others, and that the property embraced in it was not subject to the liabilities of said White, then the same would not be void in law for fraud, though the same was executed by said White with intent to hinder, delay, and defraud creditors.

"5. A debtor has a legal right to sell, mortgage, or otherwise dispose of property exempt from execution."

The refusal of the charge asked by the plaintiff, and the several charges given at the instance of the defendant, are now assigned as error.

[McWilliams v. Rodgers.]

ELMORE & GUNTER, for the appellant, cited *Constantine v. Twelves*, 29 Ala. 607; *Reynolds v. Welch*, 47 Ala. 200; *Wiley, Banks & Co. v. Knight*, 27 Ala. 336.

W. H. & W. T. NORTHINGTON, DOSTER & ABNEY, and WATTS & WATTS, *contra*.

STONE, J.—The term "evidence," in legal, technical sense, is almost the synonym of instrument of proof. Greenleaf (vol. 1, § 1) says, it "includes all the means by which any alleged matter of fact, the truth of which is submitted to investigation, is established or disproved." This is its technical meaning.—Bouvier's Dictionary. Its general, popular signification is much broader. Its primary, obvious meaning is, "that which makes evident or manifest; the ground of belief or judgment; conclusive testimony; a statement which contains proofs; as, the evidence of our senses; evidence of truth or falsehood."—Webster's Dictionary. It is frequently said of a proposition, that it furnishes the evidence of. its truth, or carries evidence of its own truth. "Self-evident," "evidently," are employed to express the idea of full proof—conviction.

The plaintiff below, appellant here, asked the court to charge the jury, that "The use to which a deed is applied, is evidence of the intent with which it is made. If the deed was used to hinder and delay creditors, then it is evidence that it was so intended, and if found to be so, is void as to existing creditors." This charge was refused, and plaintiff excepted. Understood in its technical sense, or, rather, expressed with the proper limitations, imposed by the legal definition of the word evidence, we can not say this charge should not have been given. The use to which a deed is applied, is certainly a circumstance, or fact, an instrument of proof, which the jury may look to, in determining the intent with which it was made. But it is not necessarily full proof, or " conclusive testimony." Jurors are drawn from the non-professional walks of life, and are rarely skilled in legal, or technical lore. They are accustomed to place the general or popular construction on language; and we think the charge asked would have been likely to mislead them, if it had been given to them without explanation. A charge which has a tendency to mislead, or which, to prevent such result, requires explanation, may, and should generally, be refused. It is not error to refuse such charge.—1 Brick. Dig. 339, §§ 59, 60, 61, 63.

We can not find that, in any of the charges given at the instance of defendant, and excepted to by plaintiff, there was

any invasion of the principles declared in *Wiley, Banks & Co. v. Knight*, 27 Ala. 336, and *Reynolds v. Welch*, 47 Ala. 200. The first three of the charges given at the instance of the defendant, as assertions of legal principles, are free from error, and are not at all inconsistent with the principles declared in the cases above referred to. The principle of those cases was fully and strongly laid before the jury, in the charges given at the instance of the plaintiff; and we can not suppose that the jury, in considering charges on one phase of the case, ignored another, which had been laid before them in language equally clear and forceful.

The last two charges, given at the instance of defendant, are objected to, as abstract. An abstract charge, which asserts a correct legal proposition, will not, *per se*, justify the reversal of a judgment, unless the court can perceive it probably misled the jury.—*Partridge v. Forsyth*, 29 Ala. 200, and authorities on appellee's brief. The charges given at the plaintiff's instance, on the subject of homestead exemption, were so full, that we are unable to perceive how the jury could have been misled by these charges.

Affirmed.