# Campbell *v.* Hopkins.

*Action on Attachment Bond.*

1. *Composition with creditors; fraudulent proposal.*—A proposal by an insolvent or embarrassed debtor to his creditors, offering to surrender all of his property to them on condition of receiving an absolute release from further liability, is fraudulent, and, if accepted, would avoid the discharge, when it appears that some of the assets included in his schedule had been previously transferred to one of his creditors as collateral security, and were in his hands only for the purpose of collection; that the names of several small creditors were omitted, because he had "laid aside the money to pay them, and regarded them as paid," although the payment was in fact not made for two or three days afterwards; and that he also omitted a power-press, on which he had paid one half of the purchase-money, the vendor retaining a lien until full payment was made.

2. *Attachment, on ground of fraudulent disposition of property.*—A proposal for a composition with his creditors by an embarrassed debtor, offering to surrender all of his property on condition of receiving a release in full, is good ground for suing out an attachment (Code, § 2930), when it appears that his schedule of assets includes claims which he had already transferred to one of his creditors as collateral security, and omitted property in which he had a valuable interest, and that the names of several small creditors were omitted, money being retained and laid aside to pay them.

APPEAL from the Circuit Court of Madison.

Tried before the Hon. HENRY C. SPEAKE.

This action was brought by Frank W. Hopkins, against Allen R. Campbell and Archibald Campbell, to recover damages for the wrongful and vexatious suing out of an attachment, as alleged; and was commenced on the 24th December, 1884. The defendants pleaded "the general issue, in short by consent, with leave to give any special matter in evi-

[Campbell v. Hopkins.]

dence," and issue was joined on this plea. Under the rulings of the court, in the matter of charges given and refused, the plaintiff had a verdict and judgment for $2,572. The attachment was sued out on the 4th December, 1884, at the suit of Mallory, Crawford & Co., wholesale merchants in Memphis, Tennessee, on the ground, as stated in the affidavit, that said F. W. Hopkins "has fraudulently disposed of his property." The defendants here sued were sureties on the attachment bond. At the time the attachment was sued out, Hopkins was doing business as a merchant at Greenbier, Limestone county, and had become embarrassed, if not insolvent; and he addressed a circular letter to his creditors, which was dated December 1st, 1884, and in these words:

"In consequence of the almost total failure of the cotton crop in my section, I think it to your interest that I make the following statement, as it appears on my books. The same I herewith inclose. This statement excludes about $1,500 in doubtful and bad debts due me, on which something might possibly be realized. I made my purchases with intention of paying $ for $, and would have done so but for the disastrous crops. My proposition is, to make a fair and equitable distribution of my assets (counting at cost) among my creditors, expecting a release in full from each. I can claim under the law, as exempt, property to the amount of 1 m. dollars. I do not propose, however, to avail myself of this feature of the law, if it can be avoided; and in consideration of my not doing so, and making a clear surrender, I shall expect to be released of all further liability. I make to each of my creditors a *fac simile* statement."

On receipt of this circular letter, one of the partners of Mallory, Crawford & Co. came out to Greenbrier, and had an interview with Hopkins; and the attachment was at once sued out, and levied on plaintiff's stock of goods, garnishments being served on several of his debtors. The testimony of the plaintiff himself in reference to this circular, his condition at the time, and other attendant circumstances, or the material portions thereof, are stated in the opinion of the court. Many charges were asked by the defendants, and refused by the court, based on the facts stated as authorizing an attachment, and among them this: "(22.) If the jury believe the evidence, they must find for the defendants." The refusal of the several charges asked, and the charges given, to which exceptions were duly reserved, are now assigned as error.

[Campbell v. Hopkins.]

LAWRENCE COOPER, and MILTON HUMES, for appellants, contended that the general charge ought to have been given, citing *City Nat. Bank v. Jeffries*, 73 Ala. 183; Waples on Attachment, 52; 1 Smith's L. C. 29–30, 9th ed.; *Lukens v. Aird*, 6 Wall. 78; Bump on Fraud. Conv., 24, 190; *Wiswall v. Ticknor*, 6 Ala. 185; *Wiley, Banks & Co. v. Knight*, 27 Ala. 347; *Montgomery v. Kirksey*, 26 Ala. 172; *Reynolds v. Welch*, 47 Ala. 203; *Levy v. Williams*, 79 Ala. 171; *Sims v. Gaines*, 64 Ala. 392; *Stevens v. Helpman*, 29 La. Ann. 635; *Powell v. Matthews*, 10 Mo. 49; *Farmer's Bank v. Fonda*, 32 N. W. Rep. 664; 51 Maine, 418; 11 Metc. 231; 16 Fed. Rep. 206.

R. W. WALKER, *contra*, argued each of the assignments of error, and cited the following cases: *Durr v. Jackson*, 59 Ala. 206; *Pollak v. Searcy*, 84 Ala. 262; *Adams v. Thornton*, 78 Ala. 489; *Hodges v. Coleman*, 76 Ala. 103.

STONE, C. J.—The present suit was by Hopkins against Campbell *et al.*, for wrongfully and vexatiously suing out an attachment, under which the former's merchandise and other chattels were levied on and sold.

The following facts are clearly proved, and are undisputed: Mallory, Crawford & Co. were wholesale merchants, doing business in Memphis, Tennessee. Hopkins was their customer, and was a retail merchant, doing business at Greenbrier, Limestone county, Alabama. He was financially embarrassed, or cramped, at the opening of the year 1884, and made an agreement with Mallory, Crawford and Co., hereafter called M., C. & Co., that with certain assistance from them, he could tide his affairs over, and at the close of the season could and would pay them in full. Under this agreement, M., C. & Co. advanced to Hopkins in money and merchandise, until in November he owed them over twenty-two hundred dollars, nearly one half of his entire indebtedness.

Hopkins' principal business was advancing to planters, and his custom was to secure the repayment of such advances by mortgages and liens on the crops and stock of the planters to whom the advances were made. Of such debts from his customers, together with the securities taken for their payment, he had turned over to M., C. & Co., as collateral security for the debt due and to become due to them, different claims amounting to some eighteen hundred dollars. When harvest time arrived, M., C. & Co. returned these claims

and liens to Hopkins, that he might, as their agent, collect them, and remit to them the proceeds. He proceeded to collect several hundred dollars on them, and made some remittances; but, at the time of the attachment, hereafter described, he still held of these claims, uncollected, as much as one half or more. He also had in his hands some of the money collected, which he had not paid over; and he had some horses which he had recovered from mortgagors—part of the claims he had turned over to M., C. & Co. as collateral security.

Hopkins was a member of the partnership known as Hopkins, Seat & Son. Their business was ginning and packing cotton, for hire, or toll. Hopkins had himself purchased a power-press, used in that business; had paid $150, half of the purchase-money, and his note was out for the other half, with a year's interest, due December 1, 1884, with a lien on the press for its payment. It is not shown, or pretended, that the firm of Hopkins, Seat & Son had any part in this purchase, was bound for the unpaid purchase-money, or that it claimed any ownership in the press. So far as the record discloses, the press was the individual property of Hopkins, subject to the lien for $162. Hopkins also owed two other small debts, evidenced by notes containing a waiver of exemptions. The aggregate of these three debts was something over two hundred and twenty dollars, due to Findley, to Matthews & Co., and to Rison.

On December 1, 1884, Hopkins addressed a circular letter to his creditors. The reporter will insert a copy of that circular, omitting the schedule, as furnished in the testimony of Crawford. This circular stated on its face, that it set forth all his creditors and the amount due to each, and that it scheduled all his assets of every description. The gross amount of liabilities, as set forth, was $4,762, and the aggregate value of the assets he tendered was estimated at $4,200. His offer was to turn over his entire assets, not excepting or reserving his exemptions, on the condition, and only on the condition, that all his creditors would accept them in full payment of their claims, and give him a full discharge. He said he proposed to make a "clear surrender," and, in return, expected to be "released of all further liability."

Among the assets he proposed to surrender are the following items: "6 head of horses and mules, $400.00; collectible debts, $781.30." Large part of the claims he characterized as collectible, and proposed to turn over as part of

[Campbell v. Hopkins.]

his assets, was composed of the claims he had hypothecated, or placed as collaterals with M., C. & Co., and which were then in his hands as agent for collection. So, of the six head of horses and mules, three had been received by him in payment, or part payment, of the claims and mortgages so held by M., C. & Co. as collateral security. Neither the circular letter, nor the schedule, gave any notice of these facts.

In his schedule of creditors he did not place the name of Findley, Matthews & Co., or Rison. Nor did he mention the money then in his possession, something over two hundred and forty dollars. In regard to these, he testified before the jury as follows: "On November 29, 1884, I had on hand $228.04.  ·  ·  · That was on Saturday. I laid this money aside to pay my note to C. D. Findley, $162.05, and the account of Matthews & Co., $21.60, and of J. L. Rison, for $36.97.  ·  ·  · I made the entry on my book on Saturday, November 29, showing the payment of the Findley note. But in some way I did not send the money and check to W. R. Rison & Co. that day." [W. R. Rison & Co. were bankers.] "The next day was Sunday. On Monday, I was engaged all day in writing letters and statements to my creditors. And it was not until Tuesday, December 2, that I sent the money to W. R. Rison & Co., and requested them to pay the Findley note. But, on the Saturday before, I had laid aside this money to pay the Findley, Matthews, and Rison debts, and in making the statements to my creditors, neither the debts themselves, nor the money with which they were paid, were included. I regarded them as paid." He further testified as follows: "Several weeks prior to December 1, 1884, I realized my embarrassed condition, and contemplated making a statement and proposition to my creditors, which I did make on that day."

The plaintiff's own testimony shows that, in presenting his list of creditors, he omitted three of his debts, which were then unpaid; for setting apart money to pay them, was not paying them. He still owed the debts, and the money remained his. It would remain his, and subject to his control, until it was actually applied in their liquidation. And this "laying aside" on his part was part and parcel of his scheme to compound his debts, and obtain a discharge from them; for he had contemplated submitting his statement and proposition for "several weeks." This, then, was a naked proposition, ostensibly to make a full surrender of all

his property, for the general benefit of all his creditors, while he secretly withheld what money he had for the payment of certain preferred creditors in full, whose names, and the fact and amounts of their several claims, he also withheld. This, if successful, would have been such a fraud on his other creditors, as that they could have set aside Hopkins' discharge from his debts, because they would have been obtained by fraud.—*City Nat. Bank v. Jeffries,* 73 Ala. 183; 3 Amer. & Eng. Encyc. of Law, 396-398.

Other features of this transaction deserve comment. Of the assets proposed to be turned over to the creditors, a material part had been previously pledged to Mallory, Crawford & Co., as collateral security; and yet the offer contained nothing that could give the slightest notice of such lien or incumbrance. Not even M., C. & Co. would have detected that such was the case. If the offer had been accepted, the result must needs have been to take from M., C. & Co. what had been specially pledged to them, or to obtain from the other creditors a discharge, upon the surrender of assets greatly less valuable than they were represented to be. This would have been a fraud, which would have set aside Hopkins' discharge; for the law requires good faith on the part of a debtor in compounding with his creditors.—3 Amer. & Eng. Encyc. Law, 391.

There is yet another damaging feature of this transaction. The largest part—$162—of the money "set apart" by Hopkins was to be paid to Findley, final payment of the power-press. When that payment was made, the press became the unincumbered property of Hopkins. In his report of his assets to his creditors, no reference whatever is made to this power-press. This secured a benefit to Hopkins, of relatively considerable value—secured it secretly, and as the result of the composition he proposed to make. This, of itself, would have been a fraud, which would have invalidated the composition and discharge. And the fraudulent disposition, or attempt fraudulently to dispose of a part, of a failing debtor's effects, is sufficient ground for attachment.—*Smith v. Baker,* 80 Ala. 318; *Sims v. Gaines,* 64 Ala. 392-8; *Lehman v. Kelly,* 68 Ala. 192; *Seaman v. Nolen, Ib.* 463; *Levy v. Williams,,* 79 Ala. 171; *Prichett v. Pollack,* 82 Ala. 169; *Lukins v. Aird,* 6 Wall. 78.

There are many rulings of the Circuit Court which can not be reconciled with our views. According to the testi-

[Harrison v. Yerby.]

mony of the plaintiff, he was not entitled to recover.    Charge
No. 22 asked by defendant ought to have been given.
Reversed and remanded.