163 So. 593

**BIRMINGHAM TRUST & SAVINGS CO. et al. v. SHELTON.**

**7 Div. 323.**

Supreme Court of Alabama.

Oct. 17, 1935.

M. M. Baldwin and Shuford B. Smyer, both of Birmingham, for appellant Birmingham Trust & Savings Co.

Beddow, Ray & Jones, of Birmingham, for appellants McDonald.

Harrison & Stringer, of Talladega, for appellee.

KNIGHT, Justice.

The appeal in this cause is prosecuted from an interlocutory decree of the circuit court, in equity, overruling demurrers of the respondents to the bill filed by appellee, as receiver of the First National Bank of Sylacauga, seeking the cancellation of three certain conveyances, executed by S. P. McDonald to the respondent McDonald Realty Company. The cancellation of the deeds is predicated upon the ground of fraud.

A statement of the salient facts averred in the bill is necessary to a proper understanding of the conclusions reached by us on this appeal.

It is made to appear from the bill, as amended, that the respondent S. P. McDonald, prior to April 4, 1931, and continuously since that date was indebted to the First National Bank of Sylacauga, Ala., in a sum of money largely in excess of $150,000, and this indebtedness was among the assets of said bank at the time it went into the hands of the complainant as receiver under the order of the comptroller of the currency, on the 23d day of May, 1934.

That prior to April 4, 1931, the said S. P. McDonald was also indebted to the respondent Birmingham Trust & Savings Company, but in an amount which the complainant alleges was unknown to him.

It further appears from the averments of the amended bill that prior to the 4th day of April, 1931, the said Birmingham Trust & Savings Company requested the said S. P. McDonald to execute to it a mortgage on all of his property to secure the payment of his indebtedness to that institution; that the said McDonald advised the Birmingham Trust & Savings Company, in substance, that the execution of such a mortgage would cause investigation of his financial status, and that he was in no position to stand such an investigation, and that the Birmingham Trust & Savings Company then consulted with its own attorneys, and after such consultation with its attorneys, the said Birmingham Trust & Savings Company conceived the idea, and the said S. P. McDonald undertook to carry the same into effect, of organizing a corporation and having said McDonald convey all of his property to said corporation so as to enable him, the said S. P. McDonald, to handle, manipulate, pledge, or hypothecate the stock of said corporation to said Birmingham Trust & Savings Company, and in effect convey the title to said real estate, and conceal from the general public and from his individual creditors such fact; whereas, if, as originally planned and suggested, the said S. P. McDonald, as an individual, had executed a mortgage on the property then owned by him, and said mortgage had been placed on the public records of Talladega county, Ala., the same would have been open to inspection by all of the creditors of the said S. P. McDonald, including the First National Bank of Sylacauga, and such creditors would have had the right to immediately attack said mortgage by proceedings instituted in bankruptcy, or by other legal proceedings.

That pursuant to said preconceived idea, and for the purpose of concealing the manipulation of said property, the said S. P. McDonald and his two sons, S. P. McDonald, Jr., and James T. McDonald, organized a corporation known as the McDonald Realty Company, with a total authorized capital stock of $2,000, divided into twenty shares, of the par value of $100 each. That the elder McDonald and his two named sons were the sole incorporators, the father subscribing for eighteen shares and his two sons one share each. The articles of incorporation were filed in the office of the judge of probate of Talladega county on April 6, 1931.

It is averred that the articles of incorporation of the said McDonald Realty Company were prepared by the attorneys of the Birmingham Trust & Savings Company, and that said company not only conceived said plan or scheme, but actively participated in its execution. That after the incorporation of said McDonald Realty Company, the said S. P. McDonald, by three separate deeds, dated respectively, April 4, 1931, May 2, 1931, and July 21, 1931, conveyed certain real property to the said McDonald Realty Company upon recited money considerations, which the bill avers were fictitious. That in truth, no considerations were paid other than the issuance of said stock.

It is averred that, by these conveyances, the said McDonald conveyed to the McDonald Realty Company property of the value of, to wit, $40,000, and received therefor the eighteen shares of the stock of said company of the par value of $100 per share; that the property so conveyed to the McDonald Realty Company was substantially all the property owned by said S. P. McDonald. It is further averred that the two sons of said S. P. McDonald paid nothing for the stock subscribed for by them.

It is further averred that while the articles of incorporation of the McDonald Realty Company disclosed that the object and purposes of said corporation were to engage in a real estate business and other kinds of business, that said statements were false, and known to be false by the parties at the time, and that the sole purpose of the organization was to deceive the creditors of the said S. P. McDonald; that it was not in fact contemplated by the Birmingham Trust & Savings Company, or by the said

S. P. McDonald, that the said McDonald Realty Company would engage in any business, but that the sole purpose of the organization of said corporation was to provide for the conveyance of all the property of said S. P. McDonald to the said McDonald Realty Company, and the pledging of all the stock of said McDonald Realty Company to the Birmingham Trust & Savings Company, and thereby hinder, delay, or defraud said First National Bank and other creditors of said S. P. McDonald; and that as a result of said organization of said corporation, the conveyances to it of said property, and the pledge of said shares of stock, the said First National Bank of Sylacauga and other creditors of said S. P. McDonald were in fact defrauded.

It is further averred that all the shares of stock (twenty shares) of the McDonald Realty Company, "a short time after the incorporation," were pledged to the Birmingham Trust & Savings Company to secure the same indebtedness which, it was agreed, prior to the organization of said corporation, was to be secured by said shares of stock. That the said McDonald Realty Company has not engaged in any business since its formation.

It is also averred that at the time of the transactions complained of, and ever since, the said S. P. McDonald was insolvent, a fact averred to be known to the Birmingham Trust & Savings Company. It is also averred that there has been no change in the occupancy or possession of said property, and the public was not at any time put on notice of the conveyances of said property, or the transfer or pledge of said stock. The bill was filed August 21, 1934. The conveyances were actually made in 1931.

The bill contains other averments and charges, but which we deem unnecessary to mention. The charges and averments contained in paragraphs 15 and 16 we shall have occasion to mention further on in this opinion.

The bill is filed by the complainant on behalf of itself, and all other creditors of said S. P. McDonald, who may in the proper way join in the same.

The bill prays that the conveyances to McDonald Realty Company be held to be fraudulent and void as against the First National Bank of Sylacauga and the receiver thereof; that such conveyances be canceled and annulled; that the court ascertain the amount due and owing by the said S. P. McDonald to the First National Bank of Sylacauga on April 4, 1931, and at the present time; that the property be sold to satisfy the debts owing to complainant as such receiver and to any other creditors who may join in this bill. The bill further prays in the alternative that if the conveyances be held not to be fraudulent and void as against the First National Bank of Sylacauga, then that the court will decree that said conveyances and pledge constitute a conveyance of substantially all of McDonald's property, and constituted, in legal effect, a general assignment for the benefit of all creditors.

We have taken the above facts from the bill, and we must be understood in this opinion as dealing only with the allegations made in the bill, and the demurrer thereto.

█ Confessedly the bill, in so far as it sought, in the alternative, to have the pledge by said S. P. McDonald of the stock of the McDonald Realty Company to secure the pre-existing indebtedness of said McDonald to the said Birmingham Trust & Savings Company declared to be a general assignment for the benefit of all the creditors of said McDonald, contains equity. Code, § 8040; Bell v. Goetter, Weil & Co., 106 Ala. 462, 17 So. 709; Mullin v. Palos Coal & Coke Co., 196 Ala. 261, 72 So. 76. The bill in this aspect presents grounds for the interposition of equitable relief, and therefore the demurrers addressed to the bill as a whole were not well filed, and were properly overruled. Wood v. Estes, 224 Ala. 140, 139 So. 331; Oden v. King, 216 Ala. 504, 113 So. 609, 54 A. L. R. 1413; Thompson v. Brown, 200 Ala. 382, 384, 76 So. 298; Hudson v. Hudson, 204 Ala. 75, 85 So. 282; Bank of New Brockton v. Dunnavant, 204 Ala. 636, 639, 87 So. 105; City of Birmingham v. Louisville & Nashville R. Co., 216 Ala. 178, 112 So. 742.

So, then, we are left to determine whether the bill as one to set aside the several conveyances for fraud is sufficient against the demurrer directed thereto.

█ In our treatment of the case in this respect we deal only with the allegation made by the complainant in his bill, and such admissions of fact well pleaded, as the demurrer implies. Of course, the demurrer does not admit to be true mere conclusions of fraud drawn by the pleader,

if the facts averred will not justify such conclusions. What the real facts of the case may be remains to be determined upon final hearing, if such a hearing be had.

The circuit court held that the bill, as one to annul and cancel the several conveyances for fraud, was not subject to any grounds of demurrer directed thereto, and upon an examination and consideration of the averments of the bill, we are of the opinion the court below in this respect reached a proper conclusion, and his decree overruling the demurrer to this aspect of the bill should be affirmed.

Fraud is never presumed, and when the validity of a conveyance is brought in question on that ground, the facts relied upon to show the fraud must be averred, and mere deductions or conclusions of the pleader, not supported by a statement of facts showing that a fraud was perpetrated, will not suffice. The burden of allegation and proof of the fraud rests, of course, upon the complaining party. Pollak v. Searcy, 84 Ala. 259, 262, 4 So. 137, 139; Allen v. Overton, 208 Ala. 504, 507, 94 So. 477.

The appellants insist that the bill, in respect to its charges of fraud in the organization of the McDonald Realty Company, in the transfer by the said S. P. McDonald of his property to said corporation, and the pledging of the shares of the stock of said corporation to the Birmingham Trust & Savings Company, is not supported by a statement of facts showing that fraud was in fact committed, but rests wholly upon conclusion of the pleader. That the facts averred, apart from the conclusion of the pleader, do not show any fraudulent act on the part of said S. P. McDonald and the Birmingham Trust & Savings Company, that every fact averred may exist, and yet they do not support the charge of fraud deduced by the pleader from such stated facts. If this is true, then the bill in this respect would be subject to the respondents' demurrer.

Under the averments of the bill there can be no escape from the conclusion that the respondent S. P. McDonald was on April 4, 1931, indebted to the Birmingham Trust & Savings Company; that this institution was anxious to have this indebtedness secured, and, to that end, called upon Mr. McDonald for a mortgage upon all of his property; that the Birmingham Trust & Savings Company knew at that time that Mr. McDonald was insolvent; the Birmingham Trust & Savings Company was then advised by Mr. McDonald that to execute such a mortgage would lead to an investigation of his affairs, an investigation he was in no financial condition to stand; that it was then arranged that the McDonald Realty Company should be organized; and that Mr. McDonald should convey all of his property to this corporation for no other purpose than to convert this real estate into personal property—corporate stock—to enable Mr. McDonald to transfer this stock to the Birmingham Trust & Savings Company, to secure Mr. McDonald's indebtedness to it, and thereby save Mr. McDonald from exposing his financial condition to the world. To this corporation, which was never in fact to function, Mr. McDonald promptly conveyed all his property, of the value of $40,000, in payment of eighteen shares of the stock in said corporation, shares of stock ostensibly worth $100 per share.

If the averments of the bill are true, and we must so treat them on demurrer, McDonald Realty Company was a mere "dummy," a sham, and S. P. McDonald was the corporation and the corporation was S. P. McDonald. The McDonald Realty Company had only the image of a corporation, devoid of life. Harris v. First National Bank of Tuscumbia et al., 227 Ala. 86, 149 So. 86; Dixie Coal Min. & Mfg. Co. v. Williams, 221 Ala. 331, 128 So. 799.

This court in the case of McDowell v. Steele, 87 Ala. 493, 6 So. 288, speaking through Stone, C. J., said: "It is also well settled under our system that a failing debtor, who is unable to pay all his debts, may elect whom he will pay, and pay them in full, although he thereby disables himself to pay anything to his other creditors. But this last principle has its limit, which is as well defined and universal as the principle itself. It is this: The arrangement or adjustment by which the creditor secures, or attempts to secure, his own claim must not stipulate, for or openly or secretly secure or provide, any benefit to the debtor beyond what the law, without such agreement, would secure to him. If the security transcend this boundary, it is fraudulent as to the failing debtor; and if the secured creditor knows of other debts unprovided for, or, what is the same thing, has information calculated

to put him on inquiry which, if followed up, would lead to the discovery of other debts, then it is fraudulent as to him. 3 Brick. Dig. p. 517, § 137; Hodges v. Coleman, 76 Ala. 103; Pope v. Wilson, 7 Ala. 690; Wiley v. Knight, 27 Ala. 336; Reynolds v. Welch, 47 Ala. 200; McWilliams v. Rodgers, 56 Ala. 87; Lehman v. Kelly, 68 Ala. 192; Seaman v. Nolen, 68 Ala. 463; Pritchett v. Pollock, 82 Ala. 169, 2 So. 735; Campbell v. Hopkins [87 Ala. 179], 6 So. 76; Lukins v. Aird, 6 Wall. 78 [18 L. Ed. 750]; 3 Brick. Dig. p. 679, § 10; Tillman v. Thomas [87 Ala. 321, 6 So. 151 [13 Am. St. Rep. 42]."

■ It may be stated as authoritatively settled by the adjudications of this court, as well as elsewhere, that neither the forms of the transactions, nor the means employed, by which property, liable to the satisfaction of the demands of creditors, is fraudulently sought to be placed beyond their reach, are material. Courts will look beyond mere form to the substance of the transaction. Cook v. Clark, Davis & Co. et al., 212 Ala. 257, 102 So. 213; Dinsmore et al. v. J. H. Calvin Co., 216 Ala. 503, 113 So. 522.

The case of Putney v. Wolberg et al., 127 Ala. 124, 28 So. 741, presents a case where an attachment was sued out by Robert Wolberg against Esther Meyrovitz, which was levied upon a stock of goods belonging to the latter.

The bill in this case assailed this attachment on the ground of fraud, alleging that the debt or demand upon which the attachment was based was simulated in whole or in part, and that the attachment was sued out in pursuance of a prior understanding between Wolberg and the said Meyrovitz, for the purpose of enabling said Wolberg to acquire a prior lien over the other creditors of said Meyrovitz; and that the issuance and levy of said attachment was in pursuance of a collusion between the parties to hinder, delay, and defraud the creditors of said Meyrovitz, including the complainants. The court said: "If either of these specifications of fraud are shown to be true, the attachment, as has been repeatedly held, is void. Cartwright v. Bamberger, 90 Ala. 405, 8 So. 264; Comer v. Heidelbach, 109 Ala. 220, 19 So. 719; Gassenheimer v. Kellogg, 121 Ala. 109, 26 So. 29."

The case of Stern & Co. v. Butler & Stevens, 123 Ala. 606, 26 So. 359, 360, presents this situation: On February 1, 1897, Butler & Stevens sued out a writ of attachment in the circuit court, and had the same levied by the sheriff on property belonging to the firm of Nicholson, Blount & Co., an insolvent firm. The property levied upon was all the property owned by the firm. Butler & Stevens prosecuted their attachment to judgment, and had the proceeds of the property attached, and which were then in the hands of the sheriff, condemned to the satisfaction of their judgment. Stern & Co., creditors of said Nicholson, Blount & Co., obtained judgment against them on April 8, 1897, and the same day had garnishment issued on their judgment and served on the sheriff. The sheriff on October 6, 1897, filed his answer, setting up the fact that he had in his possession the sum of $1,400, the proceeds of the sale of property of Nicholson, Blount & Co., levied on under the writ of attachment in favor of Butler & Stevens; and that the latter claimed same. The bona fides of the debt due Butler & Stevens as well as that of Stern & Co. were not denied. The plaintiff on the trial offered to prove by one Harris, the agent of the claimants in the suing out of their attachment, that the same was sued out and levied as the result of an agreement between Butler & Stevens and Nicholson, Blount & Co. in order that the former might acquire a preference or priority over other creditors of said Nicholson, Blount & Co. in the payment or collection of their debt. The court refused to allow the plaintiffs to make the proof. Plaintiffs excepted, and appealed after judgment against them.

This court responded to the appeal as follows: "When the plaintiff in attachment by collusion with the insolvent debtor sues out his writ of attachment, and obtains a judgment in pursuance of their collusive agreement, in which is condemned the effects of the insolvent debtor, this is as effectual a fraud against the rights of the debtor's other creditors, denounced by the statute, as if the transfer of his property had been made by a conveyance upon a simulated consideration. It is actually fraudulent, in securing to the plaintiff in attachment a preference which he is not entitled to, and which the courts will not recognize and enforce."

■ In this state we have never gone the length of declaring that an insolvent debtor, or one in failing circumstances, may not give a preference in the payment of his debts. If there be no secret trust, benefit, or reservation, reserved to the grantor, an

*actual sale* made by such debtor, at a fair and reasonable price, will be upheld, although it be known at the time to both contracting parties that the sale will leave the debtor without the means to pay his other creditors. Time and again this court has held that if there be a *real debt* and a *real transfer of the title,* and the beneficial enjoyment of the property in its payment, *at a fair price,* and in good faith, the fact that the creditor importunes the debtor to make the conveyance, and thereby procures the execution of the conveyance, will not suffice to stamp such conveyance as fraudulent and void against other creditors, who by such conveyance are left with unenforceable demands against such insolvent debtor.

This holding results, of course, from the recognition by this court of the right of an insolvent debtor under such circumstances to give preference in the payment of his creditors. Crawford et al. v. Kirksey et al., 55 Ala. 282, 28 Am. Rep. 704. But such preferred creditor must not go beyond the permissible purpose of securing his own debt, for if he steps beyond this, and secures a benefit to his debtor, he loses his protected status, and his conveyance will be set aside at the suit of other creditors.

From the averments of the bill, it is made to appear that there has been no change in "occupancy or possession of the property since the organization of the corporation," and the hypothecation of the stock to the respondent Birmingham Trust & Savings Company, and thus it would appear that for three or four years after the stock was transferred to the Birmingham Trust & Savings Company, the debtor, S. P. McDonald, has remained in the occupancy and possession of the property. There was then no absolute sale and transfer of the property and its use.

The appellants have here argued that this case falls within the influence of our decision in the case of Skinner et al. v. Southern Grocery Co., 174 Ala. 359, 56 So. 916, 920.

The most cursory examination will disclose that the facts in the Skinner Case, supra, are entirely different from the facts in the instant case, as we will attempt to demonstrate.

In the Skinner Case, supra, certain parties acquired lands by inheritance from one W. A. Skinner. Thereafter some of the heirs and distributees formed a partnership under the name of W. A. Skinner Company. This partnership became financially involved. The heirs made voluntary partition of the land between themselves setting aside and conveying to the parties who were not members of the partnership their shares of the property, arranging for the assumption by such heirs of the mortgages on the property. Thereafter, the parties, who were members of the partnership, conceived the idea of forming a corporation, and pursuant to such idea the Skinner Plantation Company was formed. Its authorized capital stock was $25,000, of which $20,100 was paid up, each of the corporators receiving forty shares of the par value of $100 each, *except one Allen, who received only one share, which was paid for in money,* all other subscriptions being paid by conveyance of the respective interests of the subscribers in the property inherited from said W. A. Skinner, deceased. The corporation assumed to pay and discharge the debt and mortgage held on said land by W. M. Spencer, amounting to $11,036. The lands conveyed to the corporation were valued at $20,000 over and above the debt and mortgage of Spencer. The bill averred that this was all the property owned by the incorporators, and that the stock, as above stated, was all issued to the incorporators in the amounts indicated. The bill sought to have the several conveyances of the common property—(partition deeds)—originally belonging to W. A. Skinner set aside as fraudulent, and to have the property subjected to the payment of complainant's debt or demand.

This court held that the conveyances executed inter sese to effectuate the partition of the lands were not fraudulent as to the creditors of the partnership; that it was well within the rights of the joint owners to make the partition of the lands, and to effectuate the same by deeds of conveyance, interchanged between themselves prior to the rendition of complainant's judgment.

With reference to the formation of the corporation, and the conveyance to it of the property of the incorporators, this court said: "If the averments of this bill and its exhibits are true—and this is all complainant can ask on this hearing—its creditors now own as much property in value as they owned when its debt was created. It is true that the character of the property and the title thereto are changed, yet they still own all that they owned when this debt

was contracted, and it has not even changed in character since it acquired its judgment lien. It is again true that the bill avers that complainant's debtors put all of their property into the corporation, but it also shows that they own *all of the stock* in the corporation, and therefore own the whole of the corporation as well as all its property in a court of equity, there being no indebtedness of the corporation alleged, except the mortgage debt due to Spencer. It is said by all the authorities that the mere fact that one is in debt or even insolvent does not deprive him of all dominion and control over his property; that his creditors have no right to require that his property shall remain of one certain character. * * * He occupies two relations with regard to his property—one, as the owner, and the other, as a *quasi* trustee for creditors. He is trusted by them *on faith that he is dealing with it in good faith towards them*. They therefore have this kind of an equitable claim as to the property. The law enjoins upon the debtor the obligation and duty of paying his debts, and to that end holds him to the exercise of good faith in dealing with his property. If he act in bad faith towards his creditors in dealing with his own property, and they are prejudiced thereby, they may, by virtue of the statute, have the transactions set aside as fraudulent." (Italics supplied.)

The Skinner Case, supra, is not an authority in support of appellants' contention. The court with great care points out that there was no fraud in the transaction complained of because, after the formation of the W. A. Skinner Company, by the conveyance to it of the real property, the complainant's debtors owned all the stock in the corporation, and were still the equitable owners of the lands, except as to a certain mortgage which was on the land before complainant's debt accrued.

This stock was still subject to levy and sale under execution on complainant's judgment, just as much so as the lands. Code, § 6998; Johnston et al. v. Bates, 209 Ala. 16, 95 So. 375. The corporation formed by the incorporators of the Skinner Plantation Company was organized to function, and did function, as a corporation, and the incorporators retained their stock, and continued as the equitable owners of the land. It was not created for the purpose of enabling the incorporators to transfer their property by pledge of the stock, to a preferred creditor, without disclosing to their other creditors the fact of such transfer, and at the same time to continue to occupy and enjoy the possession of the property.

The facts of the case, as made by the averments of the bill now before the court, are more similar to the facts in the case of Metcalf v. Arnold, 110 Ala. 180, 20 So. 301, 303, 55 Am. St. Rep. 24, than in the Skinner Case, supra.

In the Metcalf Case, supra, it was made to appear by the bill that the complainants had recovered a judgment against H. B. Metcalf and F. G. Weatherly, who were doing business under the firm name of H. B. Metcalf; that execution had been issued upon said judgment and returned nulla bona; that after the debts which were the basis of the judgment in favor of each of the complainants had been contracted, and while the said H. B. Metcalf and F. G. Weatherly were indebted to complainants and other creditors, the said H. B. Metcalf and F. G. Weatherly were conducting a drug business in the city of Montgomery, Ala., and had a large stock of goods and assets in said business; that after the indebtedness to complainants was contracted, but prior to the rendition of the judgment in their favor, the said H. B. Metcalf and F. G. Weatherly, with the intention to hinder, delay, and defraud complainants and other creditors, attempted to form a corporation, with a capital stock of $8,000, and put into the said corporation as its only capital stock, the stock of goods, wares, and merchandise and notes and accounts, which were the assets of the firm of H. B. Metcalf. That the said H. B. Metcalf and F. G. Weatherly, in carrying out their formed intention of hindering, delaying, and defrauding complainants and their other creditors, had the stock of said corporation, consisting of eighty shares, of the par value of $100 per share, issued as follows: Thirty-six shares to A. P. Metcalf, wife of said H. B. Metcalf, eighteen shares to H. B. Metcalf, seventeen shares to M. M. Weatherly, the wife of F. G. Weatherly, and nine shares to F. G. Weatherly. It was averred that A. P. Metcalf and M. M. Weatherly had no interest in the effects put into said corporation; that all of the property put into said corporation belonged to the two named husbands. There were other averments, which are unnecessary to be stated.

In an opinion by Brickell, C. J., this court said in part, in affirming the decree of the

chancellor overruling demurrers to the bill: "It is a bill by judgment creditors, seeking the aid of a court of equity to remove obstacles and hindrances to the enforcement of their judgments, which the judgment debtors have fraudulently interposed. Whatever may be the character of the obstacle or hindrance, whatever may be the scheme or device to which the debtor resorts, it lies within the province of a court of equity to remove it. The formation of a corporation, investing it with the legal title to all the property and rights of property of the judgment debtors, and parceling out the stock of the corporation to the debtors and their wives, may be a new device for hindering, delaying, and defrauding creditors. The novelty of the device is not of consequence. The fraud of its conception and consummation vitiates it, as fraud vitiates all transactions tainted with it." The court sustained the equity of the bill.

In the case now before the court, it is averred that S. P. McDonald, with his two sons, incorporated the McDonald Realty Company; that S. P. McDonald conveyed to it property of the reasonable market value of $40,000. There were only twenty shares of stock to be issued. Each share of the stock therefore had a real value of $2,000. Two shares of the value of $4,000 were issued to the two sons of said S. P. McDonald, who paid nothing therefor. This, within itself, was a fraud upon the creditors of said S. P. McDonald. It cannot change the situation that these two shares were subsequently pledged to the Birmingham Trust & Savings Company to secure the indebtedness of said S. P. McDonald.

We are at the conclusion that the averments of the bill are sufficient to withstand the demurrer directed to this feature of the bill, and the court properly overruled the same.

This brings us down to a consideration of the demurrers addressed to those portions of the bill which relate to the formation of the First National Company, and its transactions with the respondent Birmingham Trust & Savings Company; and the dealings between the First National Bank of Sylacauga and the Birmingham Trust & Savings Company. The bill seeks no relief as to these matters, nor is the First National Company a party to this proceeding. The point taken by appellants is, that this feature of the bill brings forward matters impertinent, irrelevant, and immaterial. With this contention we agreed.

As we view the bill, there was no valid reason to bring into the case the matters averred in paragraphs 15 and 16. The demurrers to these features of the bill should have been sustained. Bromberg v. Bates, 98 Ala. 621, 13 So. 557.

There is no connection whatever between the matters brought into the case by paragraphs 15 and 16 and the fraud from which complainant seeks relief. Upon the hearing of this case, evidence touching the matters set up and charged against the Birmingham Trust & Savings Company and S. P. McDonald in said paragraphs 15 and 16 would be irrelevant, and wholly immaterial, and upon timely objection would be excluded.

It follows that the court erred in overruling the demurrer of the appellants to those phases of the bill which bring forward dealings with the First National Company, and the dealings between the Birmingham Trust & Savings Company and the First National Bank of Sylacauga, as set forth in paragraphs 15 and 16 of the amended bill. A decree will be accordingly here entered sustaining the demurrer to those features of the bill. In all other respects, the decree of the circuit court is affirmed.

Affirmed in part, and reversed and rendered in part.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.