127 So.2d 834

**Evelyn H. HEWETT**

v.

**CONTINENTAL SUPPLY OF HUNTSVILLE, INC.**

**8 Div. 950.**

Supreme Court of Alabama.

March 2, 1961.

Smith & Moore, Guntersville, for appellant.

Butler & Scott, Huntsville, for appellee.

COLEMAN, Justice.

This is an appeal by respondent from a final decree for complainant in a suit to establish a trust in two tracts of land. It is stipulated that the title is of record in the name of the respondent. The complainant is a corporation, the respondent a natural person. The circuit court heard evidence ore tenus and rendered a decree which divested respondent of title and vested it in the corporation.

The salient facts are that in November, 1954, Jerome Hughey and Elmo Hewett started a building supply and home construction business. The business was incorporated April 17, 1956, as Continental Supply of Huntsville, Inc., a corporation. That corporation is the complainant.

Two hundred shares of stock were issued as follows: to Hughey 99 shares and to his wife 1 share, to Hewett 99 shares and to his wife 1 share. Mrs. Hewett is the respondent. Hewett was president, Hughey vice-president, Mrs. Hughey secretary, and Mrs. Hewett treasurer, respectively, of the corporation. Hewett was the "acting Manager" and operated the business of the corporation. Hughey, the vice-president, was engaged in another business in the same building. He had no specific duties as vice-president but occasionally discussed the policies and operation of the corporation with Hewett. Respondent did not participate in the business of the corporation. Whether Mrs. Hughey participated or not does not appear.

The record does not precisely show the dates here involved, but we set out the dates as they appear to be shown, at least approximately, by the record. The corporation delivered to one Duncan certain building materials, worth approximately $2,-000, on the agreement that Duncan would "swap" the lots, which are referred to as Tract One, or the Duncan lots, in exchange for the materials. In April, 1956, on the instructions of Hewett, which Hughey expressly approved, Duncan conveyed Tract One to respondent.

On March 10, 1956, Hewett borrowed $1,-500 without interest from the Citizens Bank of Onconta. Respondent's uncle was president of that bank and the transaction was conducted through him. To secure this loan, respondent and her husband executed to the bank a mortgage on their home in

Arab. At some time between April and August, 1956, the money thus borrowed was used to buy a tract of land from one Franklin. Title was taken in the name of the respondent. The dimensions of the Franklin tract were 150 by 200 feet. It was divided into two lots, the larger being 100 feet by 200 feet. The larger lot was sold for $1,600 and was conveyed to the purchaser by deed executed by respondent and her husband. There is mention of a house being on the lot, but we understand the $1,600 was paid for the lot. It is difficult to believe that a house and lot sold for $1,600 in 1956. The $1,600 was paid to the corporation. The corporation paid off the $1,500 mortgage to the Citizens Bank of Oneonta and kept the other $100. Payment to the Oneonta bank was made by a check drawn on a Huntsville bank and dated August 7, 1956. Apparently the check was not presented for payment immediately because the mortgage debt was paid November 10, 1956, according to testimony of the president of the Oneonta bank. The remaining lot, 50 by 200 feet, is referred to as Tract Two.

Frank J. Sida testified that he was president of the complainant corporation at the time of the trial; that he first became interested in purchasing stock "from" the corporation the first of August, 1956; that he contracted to purchase the stock on August 13, 1956; and that he obtained the stock probably April 18, 1957. The stock referred to above appears to be the 100 shares originally owned by Hughey and his wife.

Sida had formerly lived in Chattanooga where he operated or owned a company which sold material to the complainant on open account. On August 13, 1956, he delivered a truckload of merchandise to complainant. On that date he entered into employment by the complainant as store manager and was "in charge of making purchases." Hewett and Hughey gave Sida authority "to make all the purchases," and he made purchases from his own company and also from others. By November, complainant had purchased from Sida's company "close to $30,000.00" and had paid something on account. On November 1, 1956, the unpaid debt was $18,000, and some time in December Sida "cut them off" from further extension of credit.

January 7 or 8, presumably 1957, Sida discussed with Hewett the proposition of buying his interest "in the business." Hughey and one Pipes were present. "It was agreed to sell out to" Sida "for $4,000.00 for his (Hewett's?) part for all of it, his interest, and the contract was drawn up to that effect," but the contract was never signed by Hewett. At the time Sida "consum(m)ated the contracts to purchase the stock from Mrs. Hewett and Mr. Hughey" the financial condition of the corporation was critical, "It owed more than it was worth. Still does."

Sida testified that at the time of negotiations with respondent "for the purchase of stock and also the purchase of her land," he did not recognize that it was her land, and it was stated that he, Sida would pay for the stock and "file suit in behalf of the company for the lots."

Sida testified that when he first entered into "the contract" (we understand it was the contract to purchase the corporate stock), Sida, Hewett, and Hughey "Went through the real estate." Hewett and Hughey showed Sida the lots in suit and represented to him that the lots were "Part of the interest I would be buying." Sida also testified:

"Q. You went out on this particular property described as Tract One and Two? A. Yes, sir.

"Q. Tract One is the Duncan property which Mr. Duncan who testified this morning was known as the Duncan property and Tract Two is known as the Franklin property, came from Mr. Franklin who just testified? A. They told me how they bought it and explained to me how they bought it and paid for it."

Sida testified also that he was present at the time the check to the Oneonta bank,

dated August 7, 1956, was issued and that he remembered the discussion.

Sida testified that "up to the Saturday that the contract was closed over at Guntersville," respondent was willing "to deed the property over at the closing and the payment of the contract." Hughey testified that respondent, after the death of her husband told him, Hughey, "that she knew that the lots belonged to Continental Supply and she anticipated or planned deeding the lots back to the company."

Hewett died February 1, 1957. On March 9, 1957, Sida, after some weeks of negotiation, entered into a contract with the respondent to purchase her stock, including her late husband's also, we think, so as to be 100 shares or one-half of all the issued stock of the complainant. Apparently that agreement was executed before this suit was begun and Sida, when the instant bill was filed, owned all the stock of the complainant corporation. With respect to the occasion when the contract to purchase the Hewett stock was finally entered into, the transcript shows the following on cross-examination of Sida, to wit:

"Q. Mr. Sida, when was it that you agreed and entered into a contract with Mrs. Hewett for the purchase of her stock in the Continental Supply? A. When did I enter into it or when did I contract?

"Q. When did you enter into the contract. Not when you negotiated. I understood you negotiated along for a number of weeks. When did you actually embody your agreements into a written contract? A. I believe it was the 9th day of April.

"Q. Where was that done? A. Ninth day of March—I beg your pardon.

"Q. In what year? A. Nineteen fifty-seven.

"Q. Where did you enter into that contract? A. Guntersville.

"Q. In my office? A. Right.

"Q. Now, this time you testified about that you had a conversation with Mrs. Hewett when she said that when she sold you the stock they would also convey the lots, you were negotiating with her then, weren't you? A. Uh-huh.

"Q. You were negotiating with her for the purchase of the stock and the purchase of the lots? A. Right.

"Q. All right, sir, then when you came down to Guntersville and we entered into the contract for the sale of the stock, did the contract embody also the sale of the real estate? A. No.

"Q. In other words, the negotiations did not go through as you hoped they would and you finally negotiated to buy just the stock for $4,000.00 and not the stock and lots, is that right? A. It wasn't any mention in the contract of those particular items.

"Q. It wasn't mentioned in the contract but there was a heap of talk about it, wasn't it? A. Yeah.

"Q. And you finally agreed to buy just the stock for $4,000.00 and not to mention the lots? A. I made the remark that we would go ahead with what we were doing on the rest of it to get the contract negotiated and that we would take care of the lot situation in the future.

"Q. Alright, sir, you—A. Didn't you make an offer at that time that for $1,000.00 she would deed the lots over right at that time, did you not?

"Q. Well, of course, Mr. Sida, you understand that I am not answering the questions. I am asking them. A. I am telling you what the conversation was.

"Q. Are you telling us that we offered we would take $1,000.00 for the lots? A. Yes.

"Q. At the time we entered into the contract for the purchase of stock in the corporation for $4,000.00 we also agreed we would take $1,000.00 for the lots, is that right? A. That you would include the lots, deed them back to Continental Supply.

"Q. Deed them to you for $1,000.00? A. Correct."

On March 12, 1957, the bill of complaint in the instant suit was filed.

### Tract One.

Appellant concedes that the consideration for the conveyance of Tract One to her was furnished by the corporation, but insists that the corporation cannot set aside that conveyance or enforce a trust in Tract One because the purpose of the conveyance was to hinder, delay, or defraud the creditors of the corporation. Appellant's argument is based on the rule that when one purchases property and procures a conveyance thereof to be made to another for the purpose of defrauding creditors of the person furnishing the consideration, then the one procuring such conveyance will be denied relief in equity. The appellee corporation insists that the rule has no application in this case. We think it does.

■ It is well established that a deed made to defraud creditors, which is fully executed by delivery, though void as to existing creditors of the grantor at the time of execution is valid as between the parties, and the grantor and those claiming merely in succession to him are estopped from denying its validity. Henslee v. Henslee, 263 Ala. 287, 82 So.2d 222, and authorities cited there and in Ala. Digest, Fraudulent Conveyances, Key No. 172.

■ The conveyance of land for a simulated consideration, no part of which has ever been paid, is voluntary and void as to existing creditors, without regard to the solvency of the grantor or to the in-

tent entertained by the parties to the conveyance at the time. Moore v. Altom, 192 Ala. 261, 68 So. 326; McClintock v. McEachin, 246 Ala. 412, 20 So.2d 711. As against existing creditors, a voluntary conveyance is per se fraudulent. Cook v. Clark, Davis & Co., 212 Ala. 257, 102 So. 213.

■ Where the purchase price is paid by one person and title taken in the name of another for the purpose of defrauding the creditors of the person furnishing the consideration, the conveyance to such other person is fraudulent as to such creditors. The following cases support this rule. In Elliott v. Horn, 10 Ala. 348, a father furnished consideration for land and caused the conveyance to be made to his minor son. This court held the conveyance to the son void as against a creditor of the father. In Stoutz v. Huger, 107 Ala. 248, 18 So. 126, a husband furnished the consideration for real estate conveyed to his wife. This court held the conveyance to the wife void as to creditors of the husband. In Kelley v. Connell, 110 Ala. 543, 18 So. 9, where the husband paid for land conveyed to the wife, this court said the creditors of the husband were entitled to have the conveyance to the wife set aside and subjected to payment of the husband's debt except for the claim of homestead which, if proved, entitled him to the land as against his creditors. In Washington v. Arnold, 167 Ala. 448, 52 So. 463, where the husband furnished the consideration for a deed to the wife, this court held the deed fraudulent as to a creditor of the husband. In Birmingham Trust and Savings Company v. Shelton, 231 Ala. 62, 163 So. 593, in holding demurrer properly overruled to that aspect of a bill seeking to set aside conveyances allegedly fraudulent, this court said:

"It may be stated as authoritatively settled by the adjudications of this court, as well as elsewhere, that neither the forms of the transactions, nor the means employed, by which

property, liable to the satisfaction of the demands of creditors, is fraudulently sought to be placed beyond their reach, are material. Courts will look beyond mere form to the substance of the transaction. (Citations omitted.)" [231 Ala. 62, 67]

■ We are of opinion that as to fraudulent conveyances, the rules which apply to natural persons apply also to corporations. A text writer states the rule as follows:

"Furthermore, the general principles of law and the statutes governing fraudulent conveyances apply to corporations to the same extent as natural persons, and if a corporation conveys or transfers its property, with intent to hinder, delay or defraud creditors, or without consideration, existing creditors may sue to set the conveyance or transfer aside, and to subject the property to the satisfaction of their claims, or to hold the grantee or transferee liable for its value, for the reason that 'corporations cannot, any more than individuals, relieve their property from the payment of debts, except by a sale or transfer in good faith and for a full consideration.'" Fletcher on Private Corporations, Vol. 15A, § 4707, pages 122, 123, 124.

See: Berney Nat. Bank v. Guyon, 111 Ala. 491, 20 So. 520; Metcalf v. Arnold, 110 Ala. 180, 20 So. 301, 55 Am.St.Rep. 24; Fort Payne Bank v. Alabama Sanitarium, 103 Ala. 358, 15 So. 618; Corey v. Wadsworth, 99 Ala. 68, 11 So. 350, 23 L.R.A. 618, 42 Am.St.Rep. 29; Montgomery & West Point Railroad Co. v. Branch, Sons & Co., 59 Ala. 139.

■ Applying the stated principles to the facts shown in the instant case, we are of opinion that the conveyance of Tract One to respondent was a conveyance with intent to hinder, delay, or defraud the creditors of the corporation; and, while the conveyance might be set aside in a suit brought by a creditor of the corporation, or by a stockholder in a proper case, Northwestern Land Association v. Grady, 137 Ala. 219, 33 So. 874, the instant suit was brought by the corporation itself. No creditor or stockholder is a party.

The corporation furnished the consideration for the conveyance which was made at the direction of Hewett acting as president of the corporation. The vice-president, Hughey, approved the conveyance to respondent. As a witness for complainant, on direct examination, with reference to that conveyance Hughey testified as follows:

"Q. That was the first time you really had knowledge that registered that the deed was in the name of Evelyn Hewett? A. That's right.

"Q. And did you say anything about that to Mr. Hewett? A. Yes, sir, I did.

"Q. What did you say to him? A. I inquired as to why it was made out to Mrs. Hewett rather than to he and I doing business as Continental Supply, Incorporated or to the corporation and he made this statement: that he thought that it was best to do that in the event that anything should happen that the company should go bankrupt at any time we wouldn't lose everything we had, and so I said, 'Well, let it go as it is for the time being.'"

■ Hewett and Hughey together owned 99% of the corporate stock. They were the managing officers of the corporation and were clothed with authority to act for it. The conveyance was to respondent who owned ½ of 1% of the stock. The remaining ½ of 1% was owned by Mrs. Hughey. It might be that Mrs. Hughey could have complained before she parted with her stock, but as to that we do not decide because she is not a party to this suit. The conveyance was procured by the corporation, was without consideration, and, as we view the evidence, was made to defraud

creditors. Because the corporation occupies the status of a fraudulent grantor, it is not entitled to have its own fraudulent act set aside.

■ With respect to the contention that it was represented to Sida that the property was part of the assets of the corporation, it appears from the testimony of Sida above set out, that on March 9, 1957, before he purchased the stock, he was fully advised that the lots in suit were in the name of respondent and that she claimed to own them. A similar situation was presented in Piggs v. Casper Co., Inc., 196 F. 177, 116 C.C.A. 9. In that case a corporation sued to set aside a conveyance of real estate made by the corporation to one Angle without consideration in fraud of its creditors. Angle conveyed the real estate to the respondent, Pigg, as trustee for Pigg's wife to secure a fictitious debt to her. Subsequent to the conveyance to Pigg, the stock of the corporation passed into the hands of stockholders other than those who held the stock at the time of the conveyance. The new stockholders did not acquire their rights by operation of law, but acquired by purchase. The new stockholders caused suit to be brought in the corporate name to set aside both conveyances. The district court granted relief. The Circuit Court of Appeals reversed and held that the fact that the stock had passed into new hands did not authorize maintenance of the bill because "the present stockholders became such with full knowledge that the conveyance had been made." So in the instant case, Sida became stockholder with full knowledge of respondent's position, and the fact that he acquired the stock after the conveyance cannot aid the corporation.

We are of opinion that the court erred in setting aside the conveyance of Tract One to respondent.

## Tract Two.

As to Tract Two, there can be no resulting trust because Tract Two was not acquired by respondent with assets or money of the corporation. It is clear that the purchase money for Tract Two was not paid by the corporation at the time it was conveyed to respondent. Title to this tract passed to respondent at the time it was conveyed to her by Franklin. The purchase price was paid by Hewett and respondent with money borrowed from the Oneonta bank. Neither Franklin, the corporation, nor the bank had any claim on Tract Two at that time.

■ A resulting trust has its origin solely in the facts that the purchase money is paid, or advanced by one person at the time of purchase, and the title is taken in the name of another. Long, Adm'r v. King, 117 Ala. 423, 23 So. 534; Talley v. Talley, 248 Ala. 84, 26 So.2d 586. If no money was so invested at the time of the purchase, when title was taken, a subsequent contribution as part payment does not create a resulting trust. Miles v. Rhodes, 222 Ala. 208, 131 So. 633. To constitute a resulting trust it is necessary to show payment by complainant, or an absolute obligation to pay, incurred by him, as a part of the original transaction of purchase, at or before the time of the conveyance. Hooks v. Hooks, 264 Ala. 66, 84 So.2d 354. The corporation paid nothing at the time Tract Two was conveyed to respondent.

■ There is no showing of fraud against the corporation on the part of respondent or anyone else at the time she acquired title to Tract Two. It is not shown that the corporation had any property, right, or interest in Tract Two at that time. It is not shown that the conveyance of Tract Two to respondent in any way impaired any right of the corporation. Good faith to the corporation does not require of its officers that they steer from their own to the corporation's benefit enterprises or investments which, though capable of profit to the corporation, have in no way become subjects of their trust or duty. Lagarde v. Anniston Lime & Stone Co., 126 Ala. 496, 28 So. 199.

■ The conveyance of Tract Two to respondent did not impress that property

with a constructive trust because there was no fraud at the time of purchase. A constructive trust arises when one person, occupying a fiduciary position, or having placed himself in such position in relation to another that good faith requires him to act for the other and not himself, acquires the title to the property in himself in place of the cestui que trust. These cases involve fraud, or a breach of trust in acquiring the title to the property in himself. The fraud must be implicit in the original transaction, not later. Talley v. Talley, supra. There is no fraud shown here in the original transaction, and, consequently, there is no constructive trust.

There remains to be considered the question as to whether or not the proof is sufficient to enforce a right of the corporation in the property on the theory of a parol, executory agreement by respondent to convey, and by the corporation to purchase, Tract Two. Such a theory was applied in Talley v. Talley, supra.

We are of opinion that the evidence does not support such a conclusion. Title was taken in respondent's name and the consideration was furnished by respondent and her husband. Later, when the part of the tract was sold, only the part sold was conveyed and title to the remainder was left in respondent.

Respondent's statements that the lots belonged to the corporation and that she "planned deeding the lots back to the company," taken most favorably to complainant, show nothing more than acknowledgment of a parol trust in lands. The statute prohibits creation of a trust concerning lands, except such as results by implication or construction of law, unless by writing. § 149, Title 47, Code 1940.

■ The evidence is against the conclusion that the corporation paid anything for Tract Two. Respondent and her husband furnished the purchase price at the time the land was bought in the respondent's name. The money used to pay the mortgage debt to the bank came, not from assets of the corporation, but from the proceeds of the sale of a part of the tract to which respondent held title and in which at that time the corporation had no right, legal or equitable.

We are at the conclusion that the evidence does not support a finding that respondent had agreed to sell the Franklin lot, or Tract Two thereof, to the corporation, and further, that the corporation has not shown an oral contract to purchase Tract Two in which the grantee has paid the consideration. We are of opinion that the court erred in granting relief to complainant as to Tract Two.

For the reasons set out, the decree is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.