STUART, Justice.
Janell McClellan appeals from a summary judgment entered in favor of Roger W. Pennington, declaring Pennington to be the owner in fee simple of a villa located in the Stillwater Resort on Lake Martin. We reverse and remand.

Procedural Background

On May 1, 2000, McClellan sued Pennington, asserting claims of fraud in obtaining a deed, civil conspiracy to defraud, fraudulent conversion of property and rents, trespass to property, and ejectment.[1] She requested a jury trial.
Pennington answered the complaint and asserted the following counterclaims: (1) a request that the trial court impose a resulting trust in favor of Pennington as to the villa, thereby divesting McClellan of any interest in the villa; (2) fraudulent representation by McClellan in representing that upon full payment she would convey title to the villa to Pennington; and (3) conversion of funds (arising from events that occurred in 1992 and that were unrelated to the purchase of the villa). Pennington also claimed that, on May 22, 1997, McClellan executed a deed to the villa, conveying legal title from McClellan individually to both Pennington and herself, jointly with an unrestricted right of surviv-orship.
On February 15, 2002, Pennington moved for a summary judgment as to his counterclaim seeking the imposition of a resulting trust as to the villa on the basis that he was the beneficial owner. On September 11, 2002, the trial court entered a partial summary judgment imposing a resulting trust on the basis that McClellan had received legal title to the villa in her name while Pennington had paid the entire purchase price for the villa.[2]
In October 2002, McClellan filed a motion to alter, amend, or vacate the trial court’s September 11, 2002, order. She argued that the trial court’s order was based on erroneous findings of fact and erroneous conclusions of law. She also noted that her claim alleging fraud in obtaining the deed remained pending and *894 that there were disputed issues of material fact as to that claim.
In August 2003, McClellan filed a motion for a summary judgment as to count III in Pennington’s counterclaim, alleging conversion. She argued that Pennington’s claim was barred by the applicable statute of limitations. The trial court agreed and granted McClellan’s summary-judgment motion on November 25, 2003. The trial court’s November 25, 2003, order also stated that “entry of this Summary Judgment constitutes a final disposition of this case.” McClellan appealed.[3]

Background

McClellan and Pennington were involved in a longtime, romantic relationship. Their dispute arose out of both parties’ claim that each was the fee simple owner of a villa located at the Stillwater Resort on Lake Martin. The facts and allegations surrounding the purchase of the villa are as follows:
McClellan claims that she located the villa, negotiated the purchase price with the sellers, and purchased the villa in October 1991. The purchase price of the villa was $47,500. McClellan admitted that she contributed $30,000 of that amount and Pennington contributed $17,500. McClellan obtained a line of credit, using her personal residence as collateral to obtain the $30,000 she paid toward the purchase of the villa. McClellan claimed that the $17,500 Pennington contributed to the purchase price was a gift to her from Pennington.[4] After the purchase, legal title to the villa was taken in McClellan’s name only.
It is undisputed that after the villa was purchased in 1991, Pennington made monthly payments to McClellan. He claims that he paid McClellan each month the amount due that month on the amount borrowed against her line of credit for the purchase of the villa and that McClellan then paid that amount to the lender. Pennington claimed that he was in essence making the payments on the villa; McClellan characterized these monthly payments as “rent.”[5]
In 1994, Pennington moved into the villa.[6] He lived in the villa for some time; he *895 later moved out, changed the locks on the doors, and began renting the villa to a third party. He retained all the rental payments he received from this third party for himself.
Pennington claimed that when the villa was purchased in 1991, he and McClellan orally agreed that when he paid the amount McClellan had borrowed against her line of credit, McClellan would convey her legal interest in the villa to him.[7] He claimed that it was always intended that the villa would belong to him. It is undisputed that he made monthly payments to McClellan in the same amount as each monthly payment due on her line of credit. Pennington claimed that on April 1, 1997, he paid McClellan $750, which was the balance due on her line of credit; on his check made payable to McClellan for that $750 balance, Pennington wrote “villa, payment in full.” After he made the $750 payment in April 1997, Pennington made no further payments to McClellan related to the villa; McClellan admitted that she did not ask him to make any further payments after that time. Pennington claimed that he has paid the property taxes on the villa annually since its purchase in 1991.

Standard of Review

McClellan appeals from the trial court’s judgment imposing a resulting trust in favor of Pennington on one of Pennington’s counterclaims and dismissing all of McClellan’s claims.[8] Thus, we must determine whether the trial court properly entered a summary judgment in favor of Pennington on his equitable claim for a resulting trust. If there are genuine issues of material fact, then the trial court erred in imposing a resulting trust in favor of Pennington.
When reviewing a ruling on a motion for a summary judgment, this Court uses the same standard the trial court used in determining whether the evidence before the court made out a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Dickinson v. City of Huntsville, 822 So.2d 411 (Ala.2001).

Analysis

Section 35-4-255, Ala.Code 1975, provides:
“No trust concerning lands, except such as results by implication or construction of law, or which may be transferred or extinguished by operation of law, can be created, unless by instrument in writing, signed by the party creating or declaring the same, or his agent or attorney lawfully authorized thereto in writing.”
The trial court held that the facts of this case established a resulting trust in favor of Pennington to the full extent of McClellan’s legal interest in the villa. The trial court based its conclusion on several facts *896 that in its order the court describes as undisputed. McClellan argues that several of those facts were disputed and that the trial court therefore erred in entering the summary judgment. McClellan also argues that, as a matter of law, Pennington is not entitled to full legal title to the villa under a theory of a resulting trust.

Discussion

Resulting trusts are divided mainly into two categories: (1) those arising on a failure of an express trust and (2) those arising as the result of a conveyance of property to one person on a consideration from another, commonly referred to as a purchase-money resulting trust. This case involves the latter — an alleged purchase-money resulting trust.
As applicable to purchase-money resulting trusts, the law in Alabama states that such a trust arises only where one has purchased property with the funds of another and has taken title in himself. Smith v. Davis, 352 So.2d 451 (Ala.Civ.App.1977). A resulting trust arises where the legal estate is disposed of or acquired, not fraudulently or in the violation of any fiduciary duty, but when the intent appears or is inferred or assumed from the terms of the disposition or from the facts and circumstances that the beneficial interest was not to go with the legal title. Birmingham & Atlantic R.R. v. Louisville & Nashville R.R., 152 Ala. 422, 44 So. 679 (1907). An essential element for a declaration of a resulting trust is the payment by one person and conveyance to another. Lewis v. Mohr, 97 Ala. 366, 11 So. 765 (1892). Another indispensable element of a resulting trust is that the purchase money be furnished at or before the purchase. A resulting trust arises at the time title passes; the basic principle is the investment of one’s funds, which were not intended as a gift, in the purchase of the property and the taking of title to the property in another. See Talley v. Talley, 248 Ala. 84, 26 So.2d 586 (1946).
To constitute a resulting trust, there must be a payment by the complainant or an absolute obligation to pay, incurred by him or her as a part of the original purchase transaction, at or before the time of the conveyance. Dorman v. Knapp, 284 Ala. 387, 225 So.2d 799 (1969). See also Hewett v. Continental Supply of Huntsville, Inc., 271 Ala. 660, 127 So.2d 834 (1961); Hooks v. Hooks, 264 Ala. 66, 84 So.2d 354 (1955).
The case of Dorman v. Knapp, supra, appears to be analogous to the facts of this case.[9] In Dorman, a father and son purchased land; the son contributed one-half of the purchase price for the land, while the father apparently obtained a loan for the other one-half of the purchase price. The title to the land was placed in the father’s name, but the son proceeded to build a residence on a portion of the land. The remaining land was rented and several mortgage payments due on the land were paid out of the collected rents. The son later paid the balance due on the father’s loan. Upon the father’s death, the son claimed that, under a theory of a resulting trust, he was the beneficial owner of the land and that the father’s other heirs had no claim to the land.
The Alabama Supreme Court disagreed, finding that the son was entitled to only a one-half interest in the property, while his father held the other one-half interest, which, upon the death of the father, passed equally to all of the father’s heirs. The Dorman Court stated:
“ ‘.... It is well settled that if a trustee employs the moneys of the cestui *897 que trust in making a purchase of lands, and takes to himself the conveyance of the legal estate, by operation of law a trust results to the cestui que trust; and a payment of part of the purchase-money will, to the extent of the payment, create a corresponding trust. But, to the creation of the trust, as was said by Chancellor KENT, in Botsford v. Burr (2 Johns. Ch. 414), “the trust must have been coeval with the deeds, or it can not exist at all. * * * The resulting trust, not within the statute of frauds, and which may be shown without writing, is when the purchase is made with the proper moneys of the cestui que trust, and the deed not taken in his name. The trust results from the original transaction, at the time it takes place, and at no other time; and it is founded on the actual payment of money, and on no other ground. It can not be mingled or confounded with any subsequent dealings whatever. They are governed by different principles; and the doctrine of a resulting trust would be mischievous and dangerous, if we once departed from the simplicity of the rule.” ’ ”
284 Ala. at 393, 225 So.2d at 804 (citations omitted).
However, the Dorman Court did not conclude that the son’s payment of money toward the purchase of the land, made after the date of the original transaction, was a gratuitous payment in favor of the father. After concluding that the son’s legal interest in the land was coexistent only with his original contribution, the Court in Dorman recognized that “[o]n final accounting, [the son] is entitled to credit for [his subsequent] payment.” Dorman, 284 Ala. at 394, 225 So.2d at 805. See also Gandy v. Hagler, 245 Ala. 167, 171, 16 So.2d 305, 308 (1944) (“Persons seeking to establish a resulting trust in land must not only show that the consideration moved from them, but that it was paid contemporaneous with the purchase of the land.”).
We apply the legal principles outlined in Dorman and the other cited cases to determine whether the trial court correctly concluded (1) that a resulting trust in favor of Pennington was established and (2) that McClellan should be divested of any legal interest in the villa. The parties do not dispute that, at the time of purchase, Pennington contributed $17,500 to be used in the purchase of the villa but that legal title to the villa was taken only in McClellan’s name. However, McClellan claims that the $17,500 was a gift to her from Pennington. Pennington denies that the $17,500 was a gift; he conversely claims that the $30,000 of the $47,500 purchase price of the villa contributed by McClellan was a loan to him.[10] Thus, genuine issues of material fact exist as to parties’ intent and the legal interest created at the time the villa was purchased.
We reverse the trial court’s order of September 11, 2002, and we remand this action for further proceedings.

McClellan’s Other Claims

On appeal, McClellan did not request that this Court reverse the order dismissing her claims alleging fraud related to the May 1997 deed, conspiracy, conversion of rents and property, trespass to property, and ejectment (see note 3). Therefore, McClellan has waived her right to appeal from the trial court’s order of dismissal, and we need not address those claims.

*898
Conclusion

Because there are genuine issues of material fact related to whether a resulting trust was created, the judgment of the trial court, declaring Pennington to be the legal owner of the villa and divesting McClellan of all title to the villa, was improper. We reverse that judgment and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, and WOODALL, JJ., concur.

. McClellan originally named Margaret Robbins, a notary public who was involved in the transaction, as a defendant. McClellan asserted a conspiracy claim and a fraud claim arising out of Robbins's notarizing the warranty deed to the villa against Robbins. McClellan and Robbins ultimately resolved their dispute, and Robbins was dismissed from this action.

. This order did not adjudicate all of the pending claims nor did the trial court certify its partial summary judgment as final pursuant to Rule 54(b), Ala. R. Civ. P.

. The clerk of the Alabama Supreme Court returned the case to the circuit court, noting that there were still claims pending in the trial court and that the order appealed from was not a final judgment. On May 3, 2004, the trial court issued an order certifying its previous summary judgments as final, pursuant to Rule 54(b), Ala. R. Civ. P. On that same date, however, the trial court also issued an order dismissing Pennington’s fraudulent-misrepresentation claim (count II of his counterclaim) and dismissing all other claims stated in any pleading that had not been adjudicated.

. According to the parties, $500 of the $17,500 amount represented the earnest money on the purchase contract for the villa. McClellan characterized Pennington's contribution as a gift; she claimed that Pennington had previously made cash gifts to her and to other family members.

. McClellan asserts that she owns other rental property she has financed in the same manner, i.e., using the rent to make the payment on the loan used to acquire the property. She also relies on testimony provided by Pennington that, right around the time the villa was purchased, he and McClellan discussed renting the villa in order to make the payments on the amount McClellan had borrowed against her line of credit. According to Pennington, McClellan said "that she wanted to rent it so that we could pay for it faster. I would make a payment, the rent would make a payment, we would pay for it faster and then maybe later on purchase some more property there."

. The record does not indicate if anyone, and if so, who, lived in the villa from 1991 to 1994. On appeal, Pennington claims that he has lived in the villa since 1991; additionally, in its September 11, 2002, order, the trial court stated that Pennington had been in ac *895 tual possession of the villa since it was purchased. However, the parties’ deposition testimony established otherwise.

. To bolster his allegations, Pennington claimed that McClellan and he had purchased a boat in 1989 and a van in 1992 on those same terms. McClellan did not dispute Pennington's allegations as to the terms of the purchases of the boat and van. She agreed that she purchased those items using her own funds and that when Pennington made payment to her in full for them, she transferred the title to him. However, she denied that the purchase of the villa was made on those same terms.

. Pennington has not cross-appealed from the trial court’s disposition of his other claims and McClellan has not appealed from the dismissal of her claims. Therefore, the only issue before us is whether the trial court erred in entering a summary judgment for Pennington on his equitable claim.

. McClellan cited this case in the brief she filed with this Court.

. McClellan claims that the monthly payments Pennington made after the purchase transaction were rent; Pennington denies that he paid any rent to McClellan. He claims that those payments were to be credited to his purchase of the villa.