PER CURIAM.
James W. Keeling (“James”), individually and as personal representative of the estate of Neita B. Keeling (“Neita’s estate”), appeals, and Jamie Keeling (“Jamie”), individually and as personal representative of the estate of Rex George Keeling (“Rex’s estate”), cross-appeals, from a summary judgment of the Etowah Circuit Court (“the trial court”), which determined that Jamie and Rex’s estate were entitled to a judgment as a matter of law on James’s and Neita’s estate’s claims and which dismissed with prejudice all those claims with “costs taxed as paid,” and from a postjudgment order, which, among other things, denied Jamie’s and Rex’s estate’s “renewed motion for costs including attorneys’ fees.”
Neita was the mother of two sons, Rex and James. Neita died on July 13, 2009. Rex died on June 3, 2010. Jamie is Rex’s widow.
In December 2010, Neita’s estate filed in the Etowah Probate Court (“the probate court”) a verified claim against Rex’s estate, seeking, among other things, the return of approximately $74,000 worth of SouthTrust Bank and/or Wachovia Bank stock, approximately $200,000 worth of dividends paid on that stock, and various items of personal property that Rex had allegedly converted from Neita.[1]
In May 2011, Rex’s estate filed in the trial court a petition to remove the administration of Rex’s estate from the probate court to the trial court. In June 2011, the trial court granted the petition, concluding that Rex’s estate “would be best served and better administrated by being in a court of equity”; that proceeding was assigned case number CV-11-219.
In July 2011, James and Neita’s estate filed in the trial court as a separate action a four-count complaint against Jamie and Rex’s estate, seeking the return of virtually the same property described in the verified claim against Rex’s estate; that action was assigned case number CV-11-286. In the complaint, James and Neita’s estate alleged that Rex, and subsequently Jamie and Rex’s estate, had converted that property.[2]
*766 On September 21, 2011, Jamie and Rex’s estate filed in the trial court a joint motion to dismiss the July 2011 conversion action or, in the alternative, a motion to consolidate the actions. Jamie and Rex’s estate submitted a brief and exhibits in support of their motion. Among other things, Jamie and Rex’s estate asserted that the conversion claims under counts one and two of the complaint failed to state a claim for which relief could be granted and that the conversion claims under counts three and foui* of the complaint were barred by the six-year statute of limitations applicable to conversion claims. As noted, in the alternative, Jamie and Rex’s estate sought to consolidate the verified-claim action and the conversion action. Because the trial court subsequently consolidated the actions in May 2012, we omit any further references to Jamie and Rex’s estate’s motion to consolidate.
Also on September 21, 2011, James and Neita’s estate filed a motion in opposition to Jamie and Rex’s estate’s motion to dismiss, denying the material allegations in the motion and requesting a hearing on the matter. James and Neita’s estate also filed an amended complaint and demanded a jury trial.
On September 23, 2011, Jamie and Rex’s estate filed an amended joint motion to dismiss. Jamie and Rex’s estate submitted a brief and exhibits in support of their motion. Among other things, Jamie and Rex’s estate asserted that their statute-of-limitations defense applied to the conversion claims under all four counts. In October 2011, James and Neita’s estate filed a response to Jamie and Rex’s estate’s motion to dismiss.
In May 2012, James and Neita’s estate filed another amended complaint to add count five; that count alleged that Rex had held the property described in count one of the complaint (i.e., primarily bank stock and dividends) in constructive trust for Neita before she died and that Jamie and Rex’s estate currently were holding that property in constructive trust for Neita’s estate. Also in May 2012, Neita’s estate filed an amendment to the verified claim against Rex’s estate to assert the additional allegations set forth in count five.
In June 2012, Jamie and Rex’s estate filed an amended joint motion to dismiss or, in the alternative, for a summary judgment. Jamie and Rex’s estate submitted a brief and exhibits in support of their motion. In that motion, Jamie and Rex’s estate sought, among other things, an award of the payment of costs pursuant to § 43-2-354, Ala.Code 1975; they asserted that “costs” under that statutory provision included the payment of attorney’s fees.
In July 2012, James and Neita’s estate filed an another amended complaint to add count six; that count, once again, alleged that Rex had held the property described in count one of the complaint in constructive trust for Neita before she died and that Jamie and Rex’s estate currently were holding that property in constructive trust for Neita’s estate. That count further alleged, in part:
“4. From October 2005 and subsequent to that date, until the death of [Neita], she had progressive cognitive impairment. From time to time she suffered from confusion, disorientation, memory loss, all of which culminated in a diminished mental condition.
“5. She relied heavily on her son, [Rex]. There was a confidential relationship that existed between them. [Rex] took advantage of his position and the mental and physical weaknesses of [Nei-ta], and through undue influence prac *767 ticed by him on her through 2008, and up to her death, had [Neita] transfer to [Rex] in his name [the property described in count one of the complaint].
“6. All of the above was accomplished by [Rex] through undue influence on his mother, [Neita], and by abuse of his confidential relationship with her.”
Also in July 2012, Neita’s estate filed a second amendment to the verified claim to assert the additional allegations set forth in count six of the amended complaint.
On August 8, 2012, James and Neita’s estate filed a response to Jamie and Rex’s estate’s amended joint motion to dismiss or, in the alterative, for a summary judgment. On August 17, 2012, the trial court held a hearing on that motion and heard the parties’ oral arguments.
On August 28, 2012, the trial court entered an order reserving a ruling on Jamie and Rex’s estate’s motion and granting James and Neita’s estate 60 days to perform additional discovery to support their claims and to submit a supplemental response and/or a legal memorandum. The trial court set a hearing for November 15, 2012, to hear additional oral arguments of the parties.
October 30, 2012, James and Neita’s estate filed an amended complaint to add count seven; that count, once again, alleged that Rex had held the property described in count one of the complaint in constructive trust for Neita before she died and that Jamie and Rex’s estate currently were holding the property in “constructive trust, or in the alternative, in resulting trust” for Neita’s estate. Count seven, in addition to containing the allegations contained in count six, alleged that Rex had possessed the power of attorney for Neita and further alleged, in part:
“6. From 1997 through 2004 [Rex] had [Neita] transfer to him stock from which he received stock dividends. [Neita] employed the services of ... an attorney for the purpose of retaining the return of her stock and stock dividends.
“7. On April 14, 2004, [Rex], in writing, for good consideration, agreed to transfer back and deliver to [Neita] the stock that had been transferred to him prior to April 14, 2004, and to return the dividends that he had collected on it. The transfer was to be made back to [Neita], He agreed to transfer the stock back to [Neita] by January 15, 2005.[3]
“8. Prior to January 15, 2005, [Rex] had been holding said items of stock and dividends in constructive or resulting trust for [Neita].
“9. That although [Rex] agreed to return the stock on January 15, 2005, and terminate the trust, he did not return the stock nor the dividends and [on] that date[ ] converted the stock and dividends received held in trust for [Nei-ta].
“10. He agreed to deliver the stock and its dividends on or before January 15, 2005. He failed to do so. At that time, January 15, he converted those assets.
“11. All stock dividends and other stock received by him from [Neita] [from] 1997 through 2004 were being held in constructive or resulting trust for her; that [Rex] agreed to return all *768 of the stocks and dividends held by him in trust by written instrument dated April 14, 2004 and agreed to deliver the stock and its dividends by January 15, 2005.
“12. That [Rex] failed to deliver the stock and dividends on January 15, 2005, but after demand and after agreement to deliver, he converted those stocks to his own use and continued to obtain stock from [Neita] through 2008 which were not returned to her or her estate after demand.”
On October 31, 2012, Jamie and Rex’s estate filed an answer to James and Nei-ta’s estate’s amended complaint, denying the material allegations in the amended complaint and asserting a number of affirmative defenses. Also on October 31, 2012, Jamie and Rex’s estate filed a renewed motion to dismiss or, in the alternative, for a summary judgment.
On November 15, 2012, the trial court held the second hearing on Jamie and Rex’s estate’s motion to dismiss or, in the alternative, for a summary judgment. During that hearing, the trial court heard oral arguments.
On November 29, 2012, the trial court entered a summary judgment in favor of Jamie and Rex’s estate on all of James’s and Neita’s estate’s claims against them and dismissed all those claims with “costs taxed as paid.”
On December 11, 2012, James and Nei-ta’s estate filed a motion to alter, amend, or vacate the judgment. On December 17, 2012, Jamie and Rex’s estate filed a response to James and Neita’s estate’s post-judgment motion and a renewed motion for costs, including the payment of attorney’s fees.
On February 20, 2013, the trial court held a hearing on the postjudgment motions. During that hearing, the trial court heard oral arguments. On February 26, 2013, the trial court entered an order denying James and Neita’s estate’s post-judgment motion and denying Jamie and Rex’s estate’s renewed motion for “costs including attorneys’ fees.”
On April 5, 2013, James and Neita’s estate timely appealed.[4] On April 19, 2013, Jamie and Rex’s estate timely cross-appealed.[5] The appeals were transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975. The court consolidated the appeals.

James and Neita’s Estate’s Appeals

James and Neita’s estate contend on appeal that the trial court erred in entering a summary judgment in favor of Jamie and Rex’s estate and against Neita’s estate as to what they describe as Neita’s estate’s claims for a constructive trust or a resulting trust. James and Neita’s estate’s arguments as to this contention are somewhat confusing. James and Neita’s estate argue that Neita’s estate was not barred by the statute of limitations from enforcing what they claim was Rex’s written promise of April 14, 2004, to return stock and dividends received by him from Neita from 1997 through 2004 and from recovering additional stock and dividends received by him from 2005 through 2008. James and Neita’s estate also argue that the statute of limitations never began to run on Nei-ta’s estate’s claims for a constructive or resulting trust so long as Rex aeknowl- *769 edged the existence of a constructive or resulting trust and Neita’s superior interest in the trust property; as to this particular argument, they maintain that Rex never repudiated the trust even after he supposedly agreed to return the stock, via the April 14, 2004, acknowledgment. James and Neita’s estate argue that even if Rex repudiated the trust, “it would not have occurred until after 2005 and well within any six year statute of limitations.”
At the outset, we note that James and Neita’s estate do not argue that the trial court erred in entering a summary judgment in favor of Jamie and Rex’s estate and against James as to this issue; therefore, we summarily affirm the summary judgment as to James. “An argument not made on appeal is abandoned or waived.” Avis Rent A Car Sys., Inc. v. Heilman, 876 So.2d 1111, 1124 n. 8 (Ala. 2003). See also Galaxy Cable, Inc. v. Davis, 58 So.3d 93, 99 (Ala.2010) (“Failure by an appellant to argue an issue in its brief waives that issue and precludes it from consideration on appeal.”).
We also note that James and Neita’s estate appear to use the terms “constructive trust” and “resulting trust” interchangeably. However, although both are trusts that are implied by operation of law, Smith v. Davis, 352 So.2d 451, 453 (Ala.Civ.App.1977), they are distinct concepts. “A constructive trust is a remedy created to prevent unjust enrichment.” Beasley v. Mellon Fin. Sens. Corp., 569 So.2d 389, 394 (Ala.1990). Resulting trusts, on the other hand, “are mainly in two categories, (1) those arising on a failure of an express trust and (2) those arising on a conveyance to one person on a consideration from another, ie., commonly referred to as a purchase-money resulting trust.” Smith v. Davis, 352 So.2d at 454. “As applicable to purchase-money resulting trusts, the law in Alabama states that such a trust arises only where one has purchased property with the funds of another and has taken title in himself.” McClellan v. Pennington, 895 So.2d 892, 896 (Ala.2004). Therefore, “[a]n essential element for a declaration of a resulting trust is the payment by one person and conveyance to another.” Id. In this case, James and Neita’s estate failed to allege or to offer any evidence below and have failed to point this court to any portion of the record indicating that during her life Neita attempted, but failed, to create an express trust or that she gave Rex money with the intent that he purchase property on her behalf. Thus, James and Neita’s estate’s repeated references to a “resulting trust” are misplaced and inapplicable. For the sake of simplicity, we hereinafter refer to the claims for what James and Neita’s estate describe as a constructive trust or a resulting trust as claims for a constructive trust.
“[A] constructive trust is an equitable remedy; and a request to impose such a trust is not a cause of action that will stand independent of some wrongdoing.” Radenhausen v. Doss, 819 So.2d 616, 620 (Ala.2001). In Gulf States Steel, Inc. v. Lipton, 765 F.Supp. 696, 704 (N.D .Ala.1990), the federal district court for the Northern District of Alabama noted that
“the court’s research has revealed no case in any jurisdiction that supports [Gulf States Steel’s] argument that constructive trust constitutes a cause of action. Rather, the case law indicates unanimously that a constructive trust is a remedy imposed to prevent the enjoyment of a fraud or of a breach of fiduciary duty.”
In other words, a request for the imposition of a constructive trust must be tethered to some viable underlying cause of action. Radenhausen, supra.
*770 In this case, James and Neita’s estate make no arguments on appeal regarding the applicable statute of limitations or the propriety of the trial court’s summary judgment as to the underlying independent causes of action. Thus, any arguments as to the propriety of the trial court’s summary judgment in favor of Jamie and Rex’s estate on those underlying claims have been waived. Galaxy, supra; Avis, supra. See also Meigs v. Estate of Mobley, 134 So.3d 878, 889 n. 6 (Ala.Civ.App.2013) (“[ajrguments not raised in the appellant’s initial brief are deemed waived”); Kennesaw Life & Accident Ins. Co. v. Old Nat’l Ins. Co., 291 Ala. 752, 754, 287 So.2d 869, 871 (1973) (this court “will simply treat ... issues [not raised in the appellant’s initial brief] as not before th[is] [c]ourt”). “It is the appellant’s obligation to demonstrate error on the part of the trial court, and ... that includes providing [the appellate court] with citations to pertinent cases, statutes, and other authorities.” FabArc Steel Supply, Inc. v. Composite Constr. Sys., Inc., 914 So.2d 344, 355 (Ala.2005). When an appellant fails to properly argue an issue, that issue is waived and will not be considered. Boshell v. Keith, 418 So.2d 89, 92 (Ala.1982). Thus, other than noting our awareness of the existence of caselaw and other authorities that address the underlying independent causes of action, including the applicable statutes of limitations, we will not go further and attempt to analyze that case-law and those authorities for the purpose of reversing the judgment of the trial court. FabArc, 914 So.2d at 355. Accordingly, the trial court’s summary judgment in favor of Jamie and Rex’s estate on this issue is affirmed.[6]

Jamie and Rex’s Estate’s Cross-Appeals

In their cross-appeals, Jamie and Rex’s estate contend that the trial court erred in failing to award them costs pursuant to § 43-2-354, Ala.Code 1975; that statute provides, in pertinent part:
“The personal representative of the estate of a decedent may give notice in writing to the claimant or anyone having a beneficial interest in a claim against the estate that such claim is disputed in whole or in part; if in part, specifying the part disputed.... If the claimant in such proceeding shall fail to recover upon the disputed part of such claim, he shall be taxed with the costs thereof.”
Jamie and Rex’s estate assert that, by using the word “shall,” the legislature intended the award of costs to be mandatory in instances where, as here, the personal representative of an estate successfully disputes a claim against an estate. Jamie and Rex’s estate also maintain that “costs” under § 43-2-354 should be construed to include the payment of attorney’s fees. Although Jamie and Rex’s estate acknowledge that under Alabama law costs generally do not include the payment of attorney’s fees, they maintain that, in this instance, the probate code provides for an exception to the general rule. As to this argument, in addition to § 43-2-354, Jamie and Rex’s estate refer this court to § 43-8-196, Ala.Code 1975, and § 34-3-60, Ala.Code 1975, and case-law construing those statutory provisions. There is no caselaw specifically addressing whether the payment of attorney’s fees should be construed as part of “costs” under § 43-2-354.
*771 At the outset, we note that, in this instance, the request for costs, including attorney’s fees, to be taxed against James and Neita’s estate was made in writing in a pretrial motion to dismiss or for a summary judgment pertaining to the issue of liability only filed by Jamie and Rex’s estate. The request was repeated orally at the beginning of the hearing on the motion. Jamie and Rex’s estate, as the mov-ants, were required to present evidentiary proof regarding issues raised in the motion for a summary judgment, i.e., liability, but were not required to present evidence on other issues not being addressed at that time, i.e., costs and attorney’s fees. Although the amount and specific types of costs sought by Jamie and Rex’s estate were not specified in their written or oral requests, those requests were sufficient to notify the trial court and the opposing parties that costs were being sought and that further proceedings might be required to ascertain those costs if the issue of liability was determined in favor of Jamie and Rex’s estate in the pretrial summary-judgment proceeding. Because the trial court entered a summary judgment regarding liability and proceeded to enter an order declining to award any costs of any type against James and Neita’s estate, no further proceedings were conducted to ascertain the amount or type of costs to be taxed. We note that allowable costs may include, if appropriate, expenses paid or incurred by a party in the defense or prosecution of an action “regardless of whether they were paid to the trial court clerk.” Honeycutt v. Sherman, 806 So.2d 401, 403 (Ala.Civ.App.2001).
We agree with Jamie and Rex’s estate that, pursuant to § 43-2-354, James and Neita’s estate should have been taxed with the costs of the proceedings. The plain language of § 43-2-354 clearly states that in the event a claimant “shall fail to recover upon the disputed ... claim, he shall be taxed with the costs” of the proceedings. “The word ‘shall’ is clear and unambiguous and imperative and mandatory.” Ex parte Prudential Ins. Co. of America, 721 So.2d 1135, 1138 (Ala.1998). “Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says.” IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992).
In this instance, James and Neita’s estate failed to recover on their disputed claims against Jamie and Rex’s estate. Accordingly, we hold that, pursuant to § 43-2-354, the trial court erred in failing to tax costs against James and Neita’s estate.
However, we hold that attorney’s fees cannot be awarded as a part of the costs sought in this case. As stated, the request for costs to be taxed against James and Neita’s estate was made pursuant to § 43-2-354; that statutory provision does not include attorney’s fees as costs that may be taxed. “The general rule, as adopted in this State by the Supreme Court in Low v. Low, 255 Ala. 536, 52 So.2d 218 [ (1951) ], is that attorney’s fees are not allowed as a part of the costs of a proceeding unless so provided by contract, statute or recognized ground of equity.” Hogan v. State ex rel. Van Antwerp, 46 Ala.App. 240, 243, 240 So.2d 227, 229 (Ala.Civ.App.1970). We find that none of the exceptions apply in this case, and we decline to extend the holding in Hart v. Jackson, 607 So.2d 161 (Ala.1992), permitting attorney’s fees to be awarded pursuant to § 43-8-196, to § 43-2-354. Therefore, that portion of the judgment excluding the payment of attorney’s fees as part of the costs of the proceedings is affirmed. However, we reverse the judg *772 ment as to the taxation of other costs, and we remand this cause for the trial court to enter a judgment consistent with this opinion.[7]
2120612: APPEAL — AFFIRMED; CROSS-APPEAL — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur.

. In the verified claim, Neita’s estate described the allegedly converted property as having been "converted and misappropriated, intentionally and/or unintentionally or by misrepresentation and/or fraud.”

. In the complaint, James and Neita’s estate described the alleged conversion as "misrepresentations and/or fraudulent conversion” and described the allegedly converted property as having been "converted and misappro *766 priated, intentionally and/or unintentionally or by misrepresentations and/or fraud.”

. Rex’s April 14, 2004, handwritten memorandum reads:
"Hey James, Via your comment to lawyer Jack 'he is up to something,' not so! Just had enough; you win\\\, Good going\\\ I’m serious ! You will receive the ‘estate stock' from stock co. Do what you want to do— gift tax — 'has no tax consequences ’ — -it is a 'gift tax ’ the dividends are not enough to bother a tax return.”

. James and Neita's estate filed two separate appeals — one pertaining to the verified-claim action (appeal no. 2120612) and one pertaining to the other action (appeal no. 2120613).

. Jamie and Rex’s estate filed two separate cross-appeals — one pertaining to the verified-claim action (appeal no. 2120612) and one pertaining to the other action (appeal no. 2120613).

. Because we affirm the trial court's judgment based on James and Neita’s estate's waiver of any argument as to the propriety of the underlying independent causes of action to support the constructive-trust remedy, we decline to address Jamie and Rex's estate’s other arguments in support of an affirmance of the trial court’s judgment.

. We are reversing that portion of the judgment and remanding the case so that proceedings may be conducted to identify and tax costs against James and Neita’s estate. As noted, allowable costs may include, if appropriate, expenses paid or incurred by a party in the defense or prosecution of an action “regardless of whether they were paid to the trial court clerk.” Honeycutt v. Sherman, 806 So.2d at 403. Thus, Jamie and Rex’s estate will be permitted to submit evidence after remand of the type and amount of costs sought, including, if applicable, items not contained within the trial court's file.